IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| FEMME COMP INC., TECHNICAL AND PROJECT ENGINEERING, LLC, L-3 SERVICES, INC., DATA SYSTEMS ANALYSTS, INC., and BEARING POINT, INC., | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| THE UNITED STATES, | ) | Nos. 08-409C, 08-419C, 08-432C, 08-454C, and 08-474C (Judge Margaret M. Sweeney) |
| Defendant, | ) | |
| and | ) | |
| SAVANTAGE FINANCIAL SERVICES, INC. and BOOZ ALLEN HAMILTON, INC., | ) | |
| Defendant-Intervenors. | ) | |

**DEFENDANT'S MOTION TO STRIKE**
**ATTACHMENTS A AND B TO PLAINTIFF FEMME COMP INC.'S**
**MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 7 of the Rules of the Court of Federal Claims ("RCFC"), Defendant, the United States, respectfully requests that the Court strike Attachments A and B to Plaintiff Femme Comp Inc's ("FCI") Motion For Judgment On The Administrative Record. These attachments should be stricken because they are not part of the administrative record and misrepresent the Army's decision-making process.

Additionally, we respectfully request that the Court strike those portions of FCI's motion that rely upon Attachments A and B.

## ARGUMENT

## I. Attachments A And B Are Not Part Of The Administrative Record

Attachments A and B consist of two spreadsheets created by FCI and attached to their Motion For Judgment On The Administrative Record. These spreadsheets were not part of the record considered by the Army, nor were they the subject of a motion by FCI to supplement the administrative record. In a bid protest case, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973). Supplementation of the administrative record is permissible only in limited circumstances where it is "required for meaningful judicial review." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1338 (Fed. Cir. 2001). "Extra-record materials and post-hoc rationalizations should not be considered." Mike Hooks, Inc. v. United States, 39 Fed. Cl. 147, 154 (1997).

The Army unquestionably could not have considered the spreadsheets in Attachments A and B in its award decision, because the spreadsheets were created by FCI itself in the course of this litigation. Instead of basing its arguments on the comparison chart used by the Army (the "horse blanket" spreadsheet, AR 12467-68), FCI speculated on what would happen "if the color-coded rating system the government used were converted into a 100 point base evaluation system" and then performed the conversion itself to create an entirely new document. See Pl. Mot. at 15[1] (emphasis added). Although the Court has allowed supplementation of the administrative record when "gaps" in the record preclude the Court from determining whether the agency followed a rational process, e.g., Input/Output Tech., Inc. v. United States, 44 Fed. Cl. 65, 69 n. 4 (1999), the spreadsheets created by FCI in effect substitute a new process for the

[1] "Pl. Mot. at ___" refers to FCI's Motion For Judgment On The Administrative Record.

one actually used by the Army in awarding the contract. Far from providing information "required for meaningful judicial review," Impresa, 238 F.3d at 1338, Attachments A and B obscure the award process and therefore have no place in this Court's review of FCI's bid protest.

## II. FCI's Assignment Of Numerical Scores To The Army's Adjectival Ratings Distorts The Army's Evaluation Process

Not only are Attachments A and B not part of the administrative record, but they were created using criteria not established by the Army to convert adjectival ratings into numerical scores and consequently present a misleading picture prejudicial to the Government. Prejudice results when the matter complained of has the effect of confusing the issues. See Fisherman's Harvest, Inc. v. United States, 74 Fed. Cl. 681, 690 (2006) (denying motion to strike where material did not create prejudice or confusion); Impresa, 61 Fed. Cl. at 177 (same); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1382 (noting that motions to strike are granted where the material has "no ... logical connection to the subject matter of the controversy"). In a bid protest, the Court must determine whether the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). The spreadsheets in Attachments A and B, in which FCI invents a decision-making process different from that employed by the Army to advance FCI's arguments, cannot but confuse the issue of whether the Army's actual bid award was in accordance with law.

### A. The Army Used An Adjectival Rating System, Not Point Values, To Evaluate Offerors

In accordance with the Federal Acquisition Regulation, the contracting agency may choose how to conduct evaluations by "using any rating method or combination of methods, including color or adjectival ratings, numerical weights, and ordinal rankings." FAR

§ 15.305(a); see Metcalf Constr. Co. v. United States, 53 Fed. Cl. 617, 640 (2002) ("'There is nothing improper with the agency identifying strengths and weaknesses under an adjectival rating scheme'") (quoting Oceaneering Int'l, Inc., 2001 WL 695072, at *10 (Comp. Gen. 2001)). In awarding this contract, the Army gave every offeror an adjectival rating (with a corresponding color code) for each factor and subfactor as well as a narrative explanation of strengths and weaknesses. See, e.g., AR 11146-11166 (showing FCI's color-coded ratings and accompanying narrative explanations). The Army did not, as FCI does in Attachments A and B, convert these ratings into numerical scores.

FCI misleadingly implies that such a conversion merely states the same information in a new way, when in fact adjectival ratings and numerical scores are different types of evaluation methods. Each adjectival rating does not automatically correspond to a single numerical score; indeed, "'[p]roposals with the same adjectival rating are not necessarily of equal quality and the agency may properly consider specific advantages that make one proposal of higher quality than another.'" Metcalf, 53 Fed. Cl. at 641 (quoting Oceaneering Int'l, 2001 WL 695702, at *10). Assigning numerical scores obscures the importance of the narrative explanations of offerors' strengths and weaknesses. See FAR § 15.305(a) (requiring that in addition to using an evaluation system, "[t]he relative strengths, deficiencies, significant weaknesses, and risks supporting proposal evaluation shall be documented in the contract file."); Metcalf, 53 Fed. Cl. at 641 (noting that when offerors have the same adjectival rating the agency "must go beneath those ratings to show specifically where it finds advantages in one 'Acceptable' offer over another 'Acceptable' offer").

Furthermore, by attaching significance to scores on a 100-point scale based on original adjectival ratings that by their nature contain a certain amount of imprecision ("rounding" to the

nearest adjective, in effect), FCI's spreadsheets give the impression of a mathematical precision that did not exist in the Army's evaluation. See Serco Inc. v. United States, 81 Fed. Cl. 463, 486-89 (2008) (explaining how assigning numerical values to adjectival ratings can lead to a "false precision [that] can act like a siren charming the unwary into making arbitrary comparisons based upon digits that are not meaningful."). Having generated point totals, FCI treats them as absolute indicators of technical merit; agencies, however, even when using point-based evaluation systems, treat point totals only as useful guides for evaluation. See Super Teams Operating Co., 1995 WL 299795, 3 (Comp. Gen. 1995) (noting that "even where point scores are used … they are only guidelines for intelligent decision-making"). When numerical scores are based on imprecise adjectival ratings, relatively close scores are properly viewed as essentially equivalent. See Serco, 81 Fed. Cl. at 489 n. 38 (collecting GAO decisions approving of agencies' treatment of similar scores as substantially equal). By generating misleadingly precise point totals, Attachments A and B distract from the actual process the Army undertook of assigning adjectival ratings and evaluating narrative explanations of strengths and weaknesses.

### B. The Army Did Not Assign Exact Proportional Weights To Factors And Subfactors As Implied By FCI's Attachments

Attachments A and B cause further confusion by giving factors and subfactors exact proportional weights that the Army did not use in evaluating proposals. In creating Attachments A and B, FCI decided that on its arbitrarily-created 100-point scale, "corporate capability is given 40 points [(]with subfactor 1 given 25 and subfactor 2 given 15); performance risk is given 30 points; technical-management is given 20 points with each subfactor assigned 10 points; and small business factor assigned 10 points." Pl. Mot. at 15. In its solicitation, however, the Army assigned no such proportions, merely listing the factors in declining order of

importance and identifying some subfactors as more important or significantly more important than others. AR 379-80.

Furthermore, FCI states that Attachment A "abandons the government's process of averaging scores under Factors 1 and 3," thus allowing FCI to arrive at a numerical score for those factors that does not correspond – by FCI's own scoring system – to the adjectival rating decided upon by the Army.[2] See Pl. Mot. at 15. As the Army did not employ numerical scores, it was not engaged in "averaging" but in considering the adjectival ratings for each subfactor as well as the offerors' strengths and weaknesses to arrive at an overall rating for each factor. See Deborah Bass Assocs., 1994 WL 646409, 3 (Comp. Gen. 1994) ("What matters is the actual significance of the scores, i.e., the actual differences between the proposals. The significance of the difference in the technical merit of proposals is essentially a matter for the judgment of the agency evaluators"). FCI's objection to the Army's "round[ing] down to calculate a composite color rating," see Pl. Mot. at 15, further illustrates the type of information that becomes lost when adjectival ratings are converted to numbers. While the average of 8 points and 32 points will always be 20 points, it does not follow that a subfactor rated Susceptible to Being Made Acceptable can be rendered fully acceptable by virtue of a different subfactor being rated Good. Attachments A and B do not provide a translation or conversion of the Army's reasoning but impose a wholly new evaluation system that is not be helpful, let alone necessary, to reviewing

[2] For example, offeror PK received an evaluation of Good (Green) on Factor 1, Subfactor 1 and a rating of Susceptible to Being Made Acceptable (Pink) on Subfactor 2. AR 12468. FCI assigned points for each subfactor and added them together to arrive at a total point value of 23 for Factor 1, which, by FCI's scoring method, lands between Fair and Marginal. However, on the horse blanket—containing the actual evaluations of the Army—offeror PK received an overall rating of Susceptible to Being Made Acceptable for Factor 1. Id. Though FCI may disagree with the Army's evaluation, "[a] protester's mere disagreement with the agency's evaluation is not itself sufficient to establish that the evaluation was unreasonable." See Biospherics, Inc. v. United States, 48 Fed. Cl. 1, 14 (2000) (internal quotation omitted).

the contract award at issue here.

**C. In Creating Attachments A And B, FCI Made A Factual Error That Overstates FCI's Own Evaluation**

Finally, Attachments A and B contain a factual error that inflates FCI's own rating. As documented in the horse blanket spreadsheet, FCI (offeror PF) received an evaluation of Susceptible to Being Made Acceptable on Factor 3, Subfactor 1 and Good on Subfactor 2 (the overall rating for Factor 3 is Susceptible to Being Made Acceptable). AR 12468. In Attachment A, however, FCI is listed as having ratings of Good for both subfactors. Thus, in addition to FCI's legal error of assuming adjectival ratings could be converted into points and added up, the spreadsheets in Attachments A and B contain a factual error. Instead of FCI's Army-assigned rating for Factor 3 of Susceptible to Being Made Acceptable, FCI's version in Attachment A – by compounding legal and factual error – gives the impression that the Army rated FCI Good. In Attachment B, containing the ranking of all offerors based on FCI's point system, FCI's error resulted in its moving up 3 places in the ranking.

Because of these legal and factual errors, the spreadsheets contained in Attachments A and B can only confuse the bid award at issue here. As such, they are prejudicial to the Government and should be stricken.

## CONCLUSION

For the reasons set forth above, the Court should strike Attachments A and B in their entirety as well as those portions of FCI's Motion For Judgment On The Administrative Record relying upon them.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Assistant Director

/s Kenneth D. Woodrow
KENNETH D. WOODROW
CHRISTOPHER L. KRAFCHEK
Trial Attorneys
Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, NW
Washington, DC 20530
Phone: (202) 353-0513
Fax: (202) 514-7976

CPT CHARLES D. HALVERSON
CPT MEGAN STEPHENS
Trial Attorneys
U.S. Army Legal Services Agency
Contract and Fiscal Law Division, Team III
(JALS-KFLD3)
901 North Stuart Street, Suite 500
Arlington, Virginia 22203-1837
Phone: (703) 696-2846
Fax: (703) 696-1535

July 29, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 29th day of July, 2008, a copy of the foregoing "DEFENDANT'S MOTION TO STRIKE ATTACHMENTS A AND B TO PLAINTIFF FEMME COMP INC.'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s Kenneth D. Woodrow