**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**POST-AWARD PROTEST**

| | |
|---|---|
| DATA SYSTEMS ANALYSTS, INC.,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. ____________________<br><br>**Redacted Version** |

## COMPLAINT

Plaintiff, Data Systems Analysts, Inc. ("DSA"), by and through its undersigned counsel, and as its Complaint against Defendant, United States of America acting through the Department of the Army, (hereinafter the "Government" or "Army"), seeks injunctive and declaratory relief. DSA seeks a declaration that the Army's contract award to Booz Allen Hamilton ("BAH"), SRA International, Inc. ("SRA"), and Wyle Information Systems, LLC ("Wyle") (collectively referred to herein as "Awardees")[1] pursuant to Request for Proposals No. W91QUZ-07-R-0007 (the "RFP") issued by the U.S. Army, Army Contracting Agency, Information Technology, E Commerce, and Commercial Contracting Center ("ITEC4") was unlawful and should be enjoined because the competitive source selection process was flawed and contrary to applicable regulations and statutes.

## PARTIES

1. DSA is a Delaware corporation, with its principal place of business at Eight Neshaminy Interplex, Suite 209, Trevose, PA 19053-6980. DSA is engaged in the business of system and network engineering, software development, certification and accreditation

[1] As stated at Paragraph 14 herein, DSA is not a small business and therefore does not challenge the awards made to Savantage Financial Services, Inc. and Binary Group, Inc. The RFP reserved two of the contract awards for small businesses. For that reason, DSA challenges only the three open competition awards.

procedures, security practices, Federal regulations/guidelines, and consulting. The Defendant is the United States acting through the United States Army.

## JURISDICTION

2. Jurisdiction in this court is proper under 28 U.S.C. § 1491, and 5 U.S.C. §§ 702 and 706. DSA alleges that an executive department of the United States Government violated one or more statutes and/or regulations in connection with a federal procurement.

3. DSA has standing as an "interested party" because it submitted a proposal in response to the RFP and has a connection to and an economic interest in the award of a contract in response to the RFP. DSA asserts that if not for the flaws in the source selection, DSA would be awarded a contract.

## FACTUAL BACKGROUND

### Source Selection Process

4. On December 1, 2006, the Army issued the original RFP for the PMSS-2 Indefinite Delivery/Indefinite Quantity ("IDIQ") contracts. The RFP was re-issued on 8 June 2007 and eight amendments issued thereafter.

5. The RFP contemplated award of multiple IDIQ contracts with fixed priced (pre-negotiated loaded hourly labor rates) line items. The RFP permitted individual task orders for various pricing structures, such as firm fixed-price and time and materials. The stated purpose of the RFP was to provide the full range of required information technology-related program management support services, including advisory and consulting services, in support of various missions and of command, control, and communications activities.

6. Twenty-five (25) offerors submitted the Proposal Risk volume on 6 July 2007 and the remainder of their proposals on 30 July 2007. The price proposal was prepared by inserting

rates for various labor categories into a spreadsheet prepared by the Army, which then calculated the Evaluated Price.

7. After initial evaluations on 21 December 2007, the Army determined that twelve (12) offers were within the competitive range, including DSA and the Awardees. The RFP permitted the Army to hold discussions during proposal evaluations. Ex. 1, GAO A.R.[2] tab 4, RFP, ¶ L.4.1.1.

8. Discussions took place between the Army and the offerors in the competitive range during January 2008. The RFP also provided that the Army could issue written Items for Negotiations ("IFNs") to take place via a secure internet server. Ex. 1, GAO A.R. tab 4, RFP ¶ L.4.2.

9. DSA received the following IFNs from the Army, all of which sought clarifications or additional information to support claims made by DSA in its proposal:

[redacted]

[2] Note that the Agency Report submitted to the GAO for DSA is unique and differs from the Agency Reports submitted for other protesters.

[redacted]

Ex. 2.

10. DSA clarified all issues raised in discussions and so had [redacted] in its final proposal. Regarding pricing, DSA was [redacted], [redacted] that DSA's price could be [redacted].

11. Final proposal revisions were submitted on February 5, 2008.

12. DSA's notice of the award to Awardees is dated March 20, 2008. The notice informed DSA that its proposal had not been determined as offering best value to the Government, and identified the successful offerors and their contract prices. In the notice, the Army offered DSA a debriefing

**<u>RFP Evaluation Criteria</u>**

13. The RFP states that contract awards would be "based upon best value to Offerors whose proposals are determined by the Government to be most advantageous, considering the evaluation factors set forth below." Ex. 3, GAO A.R. tab 4, RFP, ¶ M.2.1. In making the "best value award" decision, the RFP states that the decisionmaker must consider five factors:

Corporate Capability, Performance Risk, Technical/Management, Price, and Small Business Participation. *Id.*, ¶ M.3.

14. The RFP anticipated awarding five (5) Indefinite-delivery/indefinite-quantity ("ID/IQ") contracts. Three of the awards were to be made without respect to size and two awards were to be reserved for small businesses. *Id.*, ¶ M.2.1. DSA is no longer a small business and therefore was eligible for only the three open competition awards.

15. Specifically, the RFP sets forth the evaluation factors as follows:

> **Factor 1—Corporate Capability**
>
> Subfactor 1—Knowledge of and Experience with DoD/Army Acquisition Policies and Processes
>
> Subfactor 2—Performance Capability and Resources to Support PEO EIS and CIO/G6 Programs
>
> **Factor 2—Performance Risk**
>
> **Factor 3—Technical/Management**
>
> Subfactor 1—Understanding of the PM Support Required
>
> Subfactor 2—Project Management Plan
>
> **Factor 4—Price**
>
> **Factor 5—Small Business Participation**

*Id.*, ¶ M.3.1.

16. The evaluation scheme required the Army to perform a trade-off analysis of non-price and price factors. The merit assessment of non-price factors was to be made using the stated evaluation criteria. *Id.*, ¶ M.2.2. Thus, the RFP describes the weighting of the factors as follows:

> Factor 1 is more important than Factor 2. Factor 2 is more important than Factor 3. Factor 3 is more important than Factor 4. Factor 4 is more important than Factor 5. While the Price Factor will be an important part of the integrated selection decision, the non-price evaluation factors, collectively, are significantly

> more important than the Price factor. Under Factor 1, Subfactor 1 is more important than Subfactor 2. Under Factor 3, the Subfactors are comparatively equal in importance.

*Id.*, ¶ M.3.2.

17. The RFP defines the term "significantly more important" as follows: "The criterion is substantially more important than another criterion. The criterion is given far more consideration than another criterion." *Id.*, ¶ M.3.5.

18. Therefore, the RFP anticipated that, "[t]he Government will evaluate the Price factor . . ." *Id.*, ¶ M 4.4., by weighing but not rating it. *Id.*, ¶ M 3.4. Price was intended to become a determinative factor *only* "if the non-Price factors are evaluated as comparatively equal between two or more Offerors." *Id.*, ¶ M.3.2.

**<u>The GAO Protest</u>**

19. On March 21, 2008, DSA submitted a written request for a debriefing. The Army offered to conduct the debriefing on April 9, 2008, and the debriefing was held on that date.

20. At the debriefing, DSA learned that the Army had given it [redacted] ratings. The debriefing contained no explanation of the best value trade-off that resulted in the selection of the Awardees. At the debriefing conducted on April 9, 2008, the Army informed DSA that the results of the evaluation were as follows:

| Offeror | Factor 1 | Factor 2 | Factor 3 | Evaluated Price | Factor 4 |
|---|---|---|---|---|---|
| DSA | [redacted] | | | | |
| Wyle Information Systems, LLC | | | | | |
| Booz Allen Hamilton | | | | | |
| SRA International, Inc. | | | | | |
| Binary Group, Inc. (small) | | | | | |
| Savantage Solutions (small) | | | | | |

Ex. 4, GAO A.R. tab 25, Debriefing slides at 29, 30, 32.

21. DSA filed a timely protest against the contracts to Awardees with the Government Accountability Office ("GAO") on April 21, 2008. The protest letter asserted that: (1) the Army failed to follow the RFP evaluation criteria; (2) Relied on its own unstated evaluation criteria by misapplying the RFP's weighting scheme and minimizing, if not completely ignoring, strengths of DSA's proposal which should have been fully weighed for best value to the Government; (3) the Army failed to hold meaningful discussions with DSA on price [redacted]; (4) the Army failed to hold meaningful discussions with DSA on past performance [redacted]; (5) the Army misapplied RFP evaluation criteria to deny DSA an earned [redacted]; (6) the Army did not conduct a proper price/technical trade-off analysis; and (7) the Army did not sufficiently analyze and document the price/technical trade-off as support for its best value determination.

22. On May 7, 2008, despite the fact that no Motion to Dismiss was filed against any aspect of DSA's protest, the GAO unilaterally issued an order that the Agency Report as to DSA should not include information regarding the evaluation of any other offeror's proposals. Amongst the six protesters, only the Agency Reports submitted to two of the protesters included the proposals and evaluation documents for certain of the awardees.

23. On June 2, 2008, DSA filed its Comments on the Agency Report and First Supplemental Protest, adding the following new protest ground: the Army conducted an improper best value tradeoff for DSA by deviating from the factor weighting scheme established in the RFP and minimizing or ignoring factors in which DSA excelled.

24. On June 3, 2008, Femme Comp Inc. filed its Complaint in this Court asserting that its proposal in response to the RFP was improperly eliminated from the competitive range.

25. On June 5, 2008, the GAO dismissed the protest of DSA and other parties in light of Femme Comp's pending protest in this Court.

26. Accordingly, DSA seeks preliminary and permanent injunctive relief preventing an award of the contracts as a result of the present RFP. There are no urgent or compelling circumstances that significantly affect the interests of the United States that would support an award of the contracts under the RFPs to SRA, Wyle, and BAH while DSA's protest is still pending before this Court

27. DSA represents that its counsel has provided notice to and discussed the intended filing of the requested relief with agency counsel. Written notice was also provided to the successful bidders.

**COUNT I**

**DECLARATORY JUDGMENT THAT THE ARMY FAILED TO ENGAGE IN MEANINGFUL DISCUSSIONS AND INJUNCTIVE RELIEF**

28. DSA incorporates by reference paragraphs 1-27 of the Complaint as if fully set forth herein.

29. Although the Army has broad discretion to determine the content and extent of discussions, its judgments with respect to the conduct of discussions are subject to review to determine whether they were reasonable. It is a fundamental precept of negotiated procurements that discussions, when conducted, must be meaningful; that is, discussions must identify deficiencies and significant weaknesses in each offeror's proposal that could reasonably be addressed so as to materially enhance the offeror's potential for receiving award.

### A. The Army Failed to Engage in Meaningful Discussions With Respect to the Price Factor

30. The Army failed to conduct meaningful discussions with DSA on the price factor. Had they occurred, meaningful discussions on price should have resulted in the award of a contract to DSA. With respect to price, the Army only issued IFNs to DSA addressing [redacted], and did not address the critical issue of [redacted].

[redacted] It is clear that price [redacted]. The Agency Report is instructive as to the [redacted]. In the SSED's comparison of DSA (code P3) and SRA (code P4), for example, the [redacted]

[redacted]

Ex. 5, GAO A.R. tab 22, SSDD at 55 (emphasis added).

32. This is true as well with respect to the SSA's comparison of DSA with BAH (code PY), [redacted]:

[redacted]

> [redacted].

*Id.* at 62 (emphasis added).

33. Similarly, with respect to the SSA's comparison of DSA and Wyle (code PS), [redacted]

> [redacted]

> [redacted]

[redacted]

*Id.* at 76 (emphasis added).

### B. The Army Failed to Engage in Meaningful Discussions With Respect to the Performance Risk Factor

34. The Army identified [redacted] in the substance of DSA's Performance Risk Factor, and DSA was given [redacted] to improve its competitive position with respect to particular the Performance Risk factors which, ultimately, [redacted] not to award a contract to DSA.

35. In the SSEB Final Evaluation Consensus, the document in which the rating of [redacted] was assigned, the rating is explained as follows:

[redacted]

Ex. 6, GAO A.R. tab 20, SSEB Final Evaluation Consensus, at Factor 2, unnumbered pages (emphasis added).

36. The Source Section Authority followed the SSEB's analysis by including the following in the Source Selection document:

[redacted]

Ex. 5, GAO A.R., tab 22, SSDD at 32.

37. The SSEB specifically treated the ratings [redacted] as a weakness in its evaluation in that it was sufficiently material to [redacted] The Source Selection Plan defines a weakness as follows:

[redacted]

Ex. 7, GAO A.R. tab 5, Source Selection Plan at 17.

38. DSA had included [redacted] as part of its proposal from the start, but the Army did not disclose in discussions with DSA pre-award [redacted] would prevent it from receiving [redacted] on this factor, giving it the opportunity to address and resolve those concerns.

39. Under Factor 2, the difference between each rating is a level of performance risk. The SSEB clearly stated that it viewed [redacted] Therefore, it was viewed as [redacted]. Because the [redacted] was a weakness not addressed in discussions, with respect to Factor 2, Performance Risk, DSA was put at a competitive disadvantage by the lack of meaningful discussions.

C. **<u>The Army Failed to Engage in Meaningful Discussions with Respect to the Small Business Participation Factor</u>**

40. According to Army representatives at the debriefing, DSA received a [redacted] on Factor 4-Small Business Participation because the Army felt that the [redacted] should have been [redacted].

41. If the Army had disclosed in pre-award discussions that [redacted], DSA could have adjusted its proposed [redacted] accordingly. The Army never did so, however. As a result, DSA was prejudiced by the lack of meaningful discussions because [redacted] would have been a material factor in the Army' best value determination.

## COUNT II

## DECLARATORY JUDGMENT THAT THE ARMY FAILED TO FOLLOW THE EVALUATION CRITERIA IN THE RFP AND INJUNCTIVE RELIEF

42. DSA incorporates by reference paragraphs 1-41 of the Complaint as if fully set forth herein.

43. It is a fundamental principle of procurement law that competition must be conducted on an equal basis, and that offerors must be provided with a common basis for the preparation of their proposals. The Competition in Contracting Act ("CICA") requires, in this respect, that a solicitation provide a statement of all significant factors and subfactors that the agency will consider in evaluating competitive proposals, and must state the relative importance accorded each factor and subfactor. *See* 41 U.S.C. § 253a(b). The Federal Acquisition Regulations ("FAR") also make clear that the solicitation must set forth the criteria on which evaluation of proposals will be conducted, and that the Government must adhere to these criteria when making their evaluations. *See* FAR 15.304. The Court has enforced the FAR and CICA requirements in holding that evaluations must be reasonable and consistent with the terms of the solicitation and applicable statutes and regulations.

### A. The Army Failed to Follow The Evaluation Criteria in the RFP With Respect To the Price/Non-Price Factor Tradeoff

#### 1. The Army's Best Value Tradeoff Analysis With Respect To DSA And Wyle Was Flawed Because It Deviated From The RFP's Weighting Scheme And Reflects The Unequal Application Of The RFP's Evaluation Factors.

44. DSA was evaluated by the Army's Source Selection Evaluation Board ("SSEB") as [redacted] Wyle on [redacted]. Ex. 6, GAO A.R. tab 20, SSEB Final Evaluation Consensus. DSA's [redacted] should have been sufficient to [redacted] of Wyle's proposal.

45. The Source Selection Authority ("SSA") explained her award decisions in the SSDD by resorting to comparisons of awardees and unsuccessful awardees. The comparative ratings of DSA (code P3) and Wyle (code PS) are set forth in the following table, derived from the information disclosed in the SSDD:

| FACTORS/SUBFACTORS | WYLE (PS) RATING | DSA (P3) RATING |
|---|---|---|
| 1. Corporate Capability | [redacted] | |
| Subfactor One | | |
| Subfactor Two | | |
| 2. Performance Risk | | |
| 3. Technical Mgt. | | |
| Subfactor 1 | | |
| Subfactor 2 | | |
| 4. Price | | |
| 5. Small Business Par. | | |

*See* Ex. 5, GAO A.R. tab 22, Source Selection Decision Document.

46. Strictly adhering to the evaluation scheme set forth in the RFP, there is no doubt that DSA had [redacted]. DSA was rated [redacted] Factor 1 (Corporate Capability), the most important non-price factor, and was [redacted] on Subfactor 1 of Factor 1, which was intended to be more important than Subfactor 2. Ex. 6, GAO A.R. tab 20, SSEB Final Evaluation Consensus at 4-5. Wyle, [redacted] for this most important of factors, in greatest part [redacted] Subfactor 1. DSA, on the other hand, received [redacted] Subfactor 1. In all other respects, [redacted] with respect to Factor 2, DSA and Wyle [redacted] the ratings evaluation.

**a. The Army improperly [redacted] with respect to Factor 1 (F1) and Subfactor 1 of Factor 1 (F1, S1).**

47. The Army clearly found, as the SSA admits, that [redacted] Ex. 5, GAO A.R. tab 22, SSDD at 75. Moreover, the SSA concedes that [redacted] *Id.*

48. The only statement remotely suggesting that the SSA at all weighed [redacted] Factor 1 is the following [redacted] *Id.* Other than this [redacted] on this most important of technical factors, there is nothing in the SSDD to suggest that the SSA at all gave weight to DSA's rating under this factor or considered [redacted] offered by DSA [redacted] under this factor.

49. To the contrary, the SSA devoted more attention in her comparative analysis to [redacted]. For example, she stated in the very next sentence following [redacted] Subfactor 1 the following: [redacted] *Id.*

50. Moreover, with respect to the less important Factor 2, the SSA [redacted]:

[redacted]

[redacted]

*Id.*

51. The SSA [redacted] Factor 1 identified by the SSEB. *See* Ex. 6, GAO A.R. tab 20, SSEB Final Consensus Evaluation Report. DSA, of course, cannot comment at this time on the manner with which the SSA handled whatever strengths or lack of strengths may have characterized the SSEB's evaluation of Wyle's proposal because the Agency Report produced to DSA contained only evaluation materials relating to DSA; DSA does not currently have the evaluation materials relating to Wyle or the other awardees and, thus, cannot properly assess this issue. But, it is somewhat apparent by the SSA's [redacted] in the SSDD relating to her weighing of the comparative strengths of the Wyle and DSA proposals that [redacted]:

[redacted]

Ex. 5, GAO A.R. tab 22, SSDD at 75-76.

52. How the SSA reaches this conclusory judgment is not explained in the SSDD. Without Wyle's proposal and evaluation materials, it is ultimately not possible properly to evaluate the conclusion that Wyle [redacted] Subfactor 2 and DSA [redacted] Subfactor 1.

53. But, it is clear that the SSA turned the RFP's weighting scheme totally on its head by [redacted] Subfactor 2 [redacted] Subfactor 1 and the SSEB's overall conclusion [redacted] Factor 1

2. **The Army's Best Value Tradeoff Analysis With Respect To DSA And BAH Was Flawed Because It Deviated From The RFP's Weighting Scheme And Reflects The Unequal Application Of The RFP's Evaluation Factors.**

54. DSA was evaluated by the Army as [redacted] BAH [redacted] Ex. 6, GAO A.R. tab 20, SSEB Final Evaluation Consensus. DSA's [redacted] should have been sufficient [redacted] of BAH's proposal. "The non-price evaluation factors are *significantly more important* than the Price factor." Ex. 3, GAO A.R. tab 4, RFP, ¶ M.3.2. But, the Army failed to conduct a proper trade-off analysis and BAH, rather than DSA, was awarded a contract.

55. DSA was rated as [redacted] Factor 1, the most important non-price factor, and was [redacted] Subfactor 1 of Factor 1. DSA received [redacted] Subfactor 2. BAH, in contrast, received an overall rating of [redacted] Factor 1 because, although it [redacted] Subfactor 1, it received [redacted] Subfactor 2. Ex. , GAO A.R. tab 20, SSEB Final Evaluation Consensus Report at 4-5. The only [redacted] factor under which BAH [redacted] DSA was with respect [redacted] factors under the RFP's weighting scheme.

56. The table below sets forth the evaluations of DSA and BAH (code PY) derived from the SSDD:

| FACTORS/SUBFACTORS | BAH (PY) RATINGS | DSA (P3) RATINGS |
|---|---|---|
| 1. Corporate Capability | [redacted] | |
| Subfactor One | | |
| Subfactor Two | | |
| 2. Performance Risk | | |
| 3. Technical Mgt. | | |
| Subfactor 1 | | |
| Subfactor 2 | | |
| 4. Price | | |
| 5. Small Business Par. | | |

Ex. 5, GAO A.R. tab 22, SSDD.

57. Similar to the SSA's comparative evaluation and best value assessment of DSA and Wyle, the SSA's evaluation and assessment of DSA and BAH shows a total disregard for the RFP's weighting scheme. The [redacted] assigned to DSA were [redacted], whereas the [redacted] ratings of BAH were [redacted] The underlying goal of the SSA appears not to have been the equal evaluation of the competitors under the RFP's evaluation scheme, but [redacted] BAH's [redacted] evaluation [redacted] and award it a contract on the basis of [redacted].

**a. The Army [redacted] DSA's [redacted] Factor 1 (F1) and Subfactor 1 of Factor 1 (F1, S1).**

58. The Army clearly found, as the SSA admits, that [redacted] Ex. 5, GAO A.R. tab 22,

SSDD at 61. Moreover, the SSA notes that [redacted] *Id.* Significantly, the SSA also notes that [redacted] *Id.* The extent, however, of the SSA's "weighing" of the relative strengths of DSA [redacted] is limited to the following:

[redacted]

*Id.*

59. The rest of the SSA's analysis of [redacted] Factor 1 relates to the [redacted] BAH's [redacted]. This is evident in the [redacted] BAH's Factor 1 rating which is [redacted] DSA and [redacted] BAH:

[redacted]

*Id.*

60. The foregoing paragraph is striking, because it reveals the undisguised attempt to [redacted] BAH's [redacted] Factor. There is no attempt to weigh the advantages to the Government of DSA's [redacted] [redacted] Factor. The [redacted] the SSA apparently chose to highlight in her record of this assessment are those she identified [redacted]. Even then, she admitted that [redacted]

[redacted] leaving her to conclude only that [redacted]

B. **<u>The Army Failed to Follow the Evaluation Criteria in the RFP With Respect To the Small Business Participation Factor</u>**

1. **The Army misapplied the RFP's evaluation scheme to give Wyle a [redacted] Factor 5 (Small Business Participation) [redacted].**

61. DSA has not received the evaluation materials of the awardees. However, on information and belief, based on the information reported in [redacted], it appears that Wyle was improperly awarded [redacted] Factor 5 Small Business Participation. [redacted] suggests that Wyle's proposal did not [redacted], and therefore was not entitled to [redacted], which was reserved for proposals which [redacted]. *See* Ex. 8, L-3 Third Protest at 24-5.

62. Had Wyle not been [redacted] on this factor, the comparative evaluations of Wyle and DSA, and the Army's best value determinations, would necessarily have been different. DSA was prejudiced in its evaluation to the extent that Wyle [redacted] factor than it should have. Not assigning the proper [redacted] Wyle, along with the SSA's [redacted] DSA's [redacted], materially and adversely impacted DSA's chances for a contract award.

2. **The Army misapplied the RFP's evaluation scheme with respect to its evaluation of BAH under Factor 5 (F5).**

63. Under Factor 5 Small Business Participation, DSA was given [redacted] and BAH was given [redacted]. However, as set forth in the SSDD, the actual [redacted] proposed by DSA and BAH were [redacted]:

[redacted]

Ex. 5, GAO A.R., tab 22, SSDD at 62.

64. The above justification for BAH's [redacted] to DSA's – in no way comports with the RFP's requirements for the award [redacted] under Factor 5. It is clear that, under the RFP, an offeror could qualify for [redacted]:

[redacted]

Ex. 7, GAO A.R. tab 5, Source Selection Plan.

65. DSA's proposed [redacted] [redacted]. Ex. 5, GAO A.R. tab 22, SSDD at 47-8. However, apparently, the Army concluded that DSA [redacted] as opposed to [redacted] because its proposed [redacted]. It defies reason, then, how BAH, [redacted] than DSA, somehow [redacted].

66. Had BAH not been awarded [redacted] under this factor, the comparative evaluations of BAH and DSA, and the Army's best value determinations, would necessarily have been different. DSA was prejudiced in its evaluation to the extent that BAH [redacted]. Not assigning the proper

rating to BAH, along with the SSA's [redacted] DSA's [redacted], materially and adversely impacted DSA's chances for a contract award.

**COUNT III**

**DECLARATORY JUDGMENT THAT THE BEST VALUE DECISION OF THE ARMY WAS NOT PROPERLY ANALYZED OR DOCUMENTED AND INJUNCTIVE RELIEF**

67. DSA incorporates by reference paragraphs 1-65 of the Complaint as if fully set forth herein.

68. It is well established that the Government's best value analysis must be based on accurate evaluations and differences in the offerors' proposals. In addition, the documentation of the best value decision must support the decision reached by the Government.

**A. The Army's misapplication of the RFP's evaluation and weighting scheme improperly caused the award to Wyle to be based on a technically-acceptable, lower price assessment.**

69. By not according DSA the proper weight to its [redacted], and by overvaluing Wyle's [redacted], the SSA turned this solicitation into one [redacted] – contrary to the RFP evaluation scheme – the more significant factor. This is apparent in the SSA's best value determination comparison of DSA and Wyle, in which the SSA [redacted] DSA's [redacted] and, in addition, [redacted]

[redacted]

[redacted]

[redacted]

Ex. 5, GAO A.R., tab 22, SSDD at 76 (emphasis added).

70. DSA respectfully submits that the SSA did not conduct a fair evaluation of the comparative merits of the evaluations of DSA and Wyle. The SSA did not adhere to the RFP's evaluation scheme [redacted]. The SSA's tradeoff determination, therefore, is flawed and unreasonable.

**B. The Army misapplication of the RFP's evaluation and weighting scheme improperly caused the award to BAH [redacted].**

71. By not according DSA the proper weight [redacted], and by [redacted] BAH's factors, the SSA turned this [redacted]. This is apparent in the SSA's best value determination comparison of DSA and BAH where [redacted]:

[redacted]

Ex. 5, GAO A.R., tab 22, SSDD at 62 (emphasis added).

## PRAYER FOR RELIEF

WHEREFORE, DSA respectfully requests that the Court enter judgment against the United States and further requests:

(a) That the Court determine that the Army's award to SRA, Wyle, and BAH was improper because the Army failed to engage in meaningful discussions regarding three factors: (1) Price; (2) Performance Risk; and Small Business Participation

(b) That the Court determine that the Army's award to SRA, Wyle, and BAH was improper because the Army failed to follow the evaluation criteria in the RFP with respect to: (1) the Price/Non-Price factor tradeoff and (2) the Small Business Participation factor;

(c) That the Court determine that the Best Value decision was arbitrary and capricious and was not properly documented;

(d) Entry of an order of declaratory judgment and preliminary and permanent injunctive relief, enjoining the Army from awarding contracts under the present RFP;

(e) Entry of an order directing the Army to engage in proper discussions, request final proposal revisions from the offerors; and re-evaluate those proposals before making a new award decision;

(f) Such other relief that the Court deems just and proper, including, but not limited to, DSA's attorneys' fees and costs associated with this matter.

DATED: June 19, 2008

Respectfully submitted,

DATA SYSTEMS ANALYSTS, INC.

By Counsel

WOMBLE CARLYLE SANDRIDGE & RICE PLLC

Holly Emrick Svetz
8065 Leesburg Pike, Fourth Floor
Vienna, VA 22182
(703) 394-2261
(703) 790-2623 (fax)

Of Counsel:
James K. Kearney
James S. Kurz

WOMBLE CARLYLE SANDRIDGE & RICE PLLC
8065 Leesburg Pike, Fourth Floor
Vienna, VA 22182
(703) 790-3310
(703) 790-2623 (fax)