# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FEMME COMP INC., | ) | |
| TECHNICAL AND PROJECT ENGINEERING, LLC, | ) | **REDACTED VERSION** |
| DATA SYSTEMS ANALYSTS, INC., and | ) | |
| L-3 SERVICES, INC., and | ) | |
| BEARINGPOINT, INC. | ) | Case Nos. 08-409 C<br>08-491C<br>08-432C<br>08-454C<br>08-474C<br>Judge Margaret M. Sweeney |
| Plaintiffs, | ) | |
| v. | ) | |
| THE UNITED STATES, | ) | |
| SAVANTAGE FINANCIAL SERVICES, INC., and | ) | |
| BOOZ ALLEN HAMILTON, INC. | ) | |
| Defendants. | ) | |

## PLAINTIFF DSA'S STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

1. Plaintiff, Data Systems Analysts, Inc. ("DSA") is a Delaware corporation, with its principal place of business at Eight Neshaminy Interplex, Suite 209, Trevose, PA 19053-6980. DSA is engaged in the business of system and network engineering, software development, certification and accreditation procedures, security practices, Federal regulations/guidelines, and consulting.

**Source Selection Process**

2. On June 8, 2007, Defendant, United States of America acting through the Department of the Army, (hereinafter the "Government" or "Army") issued the RFP for the PMSS-2 Indefinite Delivery/Indefinite Quantity ("IDIQ") contracts ("RFP"). AR tab 3, RFP, cover sheet at 48.

3. The RFP provides for a term of five years with a one-year base and four one-year option periods. The PMSS 2 acquisition is expected to result in the award of five (5) ID/IQ contracts with three (3) awards on an unconstrained basis and two (2) reserved for small business, although the Government reserved the discretion to award more or fewer awards. AR tab 20, Competitive Range Determination at 5068. Since DSA is no longer small, it is eligible only for the three (3) unconstrained awards.

4. The RFP contemplated award of contracts with fixed labor rate line items. The RFP permitted individual task orders for various pricing structures, such as firm fixed-price and time and materials. AR tab 3, RFP, ¶ B.3 at 50.

5. The stated purpose of the RFP was to provide the full range of required information technology-related program management support services, including advisory and consulting services, in support of various missions and of command, control, and communications activities. AR tab 3, RFP, ¶ C.1 at 53.

6. DSA was among the twenty-five (25) offerors that submitted the Proposal Risk volume on July 6, 2007 and the remainder of their proposals on July 30, 2007. AR tab 20, Competitive Range Determination at 5076.

7. After initial evaluations on 21 December 2007, the Army determined that thirteen (13) of the offerors should be excluded from the competitive range, leaving twelve (12) offers

within the competitive range, including DSA and the Awardees. AR tab 20, Competitive Range Determination at 5078.

8. The RFP permitted the Army to hold discussions during proposal evaluations and to facilitate discussion, the Army could issue written Items for Negotiations ("IFNs") to take place via a secure Army internet server. AR tab 3, RFP, ¶¶ L.4.1.1, L.4.2 at 346. Discussions took place between the Army and the offerors in the competitive range from January 2, 2008 through February 5, 2008. AR, tab 51, Debriefing slides at 11438.

9. DSA received the following IFNs from the Army, all of which sought clarifications or additional information to support claims made by DSA in its proposal:

[redacted]

[redacted]

AR, tab 21, Items for Negotiation at 6702 - 6730.

10. DSA [redacted] in discussions and so had [redacted] in its final proposal. *Id.*; AR tab 51, Debriefing slides at 11467-11487. Regarding pricing, DSA was only asked to [redacted], but was given no indication that [redacted]. AR, tab 21, Items for Negotiation at 6702 - 6730.

11. Final proposal revisions were submitted on February 5, 2008. AR tab 21, Debriefing slides at 11438.

**<u>RFP Evaluation Criteria</u>**

12. The RFP states that contract awards would be "based upon best value to Offerors whose proposals are determined by the Government to be most advantageous, considering the evaluation factors set forth below." AR tab 3, RFP, ¶ M.2.1 at 378. In making the "best value award" decision, the RFP states that the decisionmaker must consider five factors: Corporate Capability, Performance Risk, Technical/Management, Price, and Small Business Participation. *Id.*, ¶ M.3 at 379-80.

13. Specifically, the RFP sets forth the evaluation factors as follows:

> **Factor 1—Corporate Capability**
>
> Subfactor 1—Knowledge of and Experience with DoD/Army Acquisition Policies and Processes
>
> Subfactor 2—Performance Capability and Resources to Support PEO EIS and CIO/G6 Programs
>
> **Factor 2—Performance Risk**
>
> **Factor 3—Technical/Management**
>
> Subfactor 1—Understanding of the PM Support Required
>
> Subfactor 2—Project Management Plan
>
> **Factor 4—Price**
>
> **Factor 5—Small Business Participation**

*Id.*

14. The evaluation scheme required the Army to perform a trade-off analysis of non-price and price factors. The merit assessment of non-price factors was to be made using the stated evaluation criteria. *Id.*, ¶ M.2.2 at 379. Thus, the RFP describes the weighting of the factors as follows:

> Factor 1 is more important than Factor 2. Factor 2 is more important than Factor 3. Factor 3 is more important than Factor 4. Factor 4 is more important than Factor 5. While the Price Factor will be an important part of the integrated selection decision, the non-price evaluation factors, collectively, are significantly more important than the Price factor. Under Factor 1, Subfactor 1 is more important than Subfactor 2. Under Factor 3, the Subfactors are comparatively equal in importance.

*Id.*, ¶ M.3.2 at 379.

15. The RFP defines the term "significantly more important" as follows: "The criterion is substantially more important than another criterion. The criterion is given far more consideration than another criterion." *Id.*, ¶ M.3.5 at 379-80.

16. Therefore, the RFP anticipated that, "[t]he Government will evaluate the Price factor . . ." *Id.*, ¶ M 4.4 at 382, by weighing but not rating it. *Id.*, ¶ M 3.4 at 379. Price was intended to become a determinative factor *only* "if the non-Price factors are evaluated as comparatively equal between two or more Offerors." *Id.,* ¶ M.3.2 at 379.

**Award and The GAO Protest**

17. DSA's notice of the award to Awardees is dated March 20, 2008. The notice informed DSA that its proposal had not been determined as offering best value to the Government, and identified the successful offerors and their contract prices. In the notice, the Army offered DSA a debriefing. AR tab 40, Award Notification Letters at 10587-88.

18. In response to DSA's request, the Army offered to conduct a debriefing on April 9, 2008, and the debriefing was held on that date. AR tab 51, Debriefing slides at 11434.

19. At the debriefing, DSA learned that the Army had given it [redacted] non-price ratings. The debriefing contained no explanation of the best value trade-off that resulted in the selection of Booz Allen Hamilton ("BAH"), SRA International, Inc. ("SRA"), and Wyle Information Systems, LLC ("Wyle") (collectively referred to herein as "Awardees").[1] At the debriefing conducted on April 9, 2008, the Army informed DSA that the results of the evaluation were as follows:

[1] As stated at Paragraph 3 herein, DSA is not a small business and therefore does not challenge the awards made to Savantage Financial Services, Inc. and Binary Group, Inc. The RFP reserved two of the contract awards for small businesses. For that reason, DSA challenges only the three open competition awards.

| Offeror | Factor 1 | Factor 2 | Factor 3 | Factor 4 | Factor 5 |
|---|---|---|---|---|---|
| DSA | [redacted] | | | | |
| Wyle Information Systems, LLC | | | | | |
| Booz Allen Hamilton | | | | | |
| SRA International, Inc. | | | | | |
| Binary Group, Inc. (small) | | | | | |
| Savantage Solutions (small) | | | | | |

AR tab 51, Debriefing slides at 11463-464.

20. DSA filed a timely protest against the contracts to Awardees with the Government Accountability Office ("GAO") on April 21, 2008. The protest letter asserted that the Army: (1) failed to follow the RFP evaluation criteria; (2) relied on its own unstated evaluation criteria by misapplying the RFP's weighting scheme and minimizing, if not completely ignoring, strengths of DSA's proposal which should have been fully weighed for best value to the Government; (3) failed to hold meaningful discussions with DSA [redacted] which the Army [redacted]; (4) failed to hold meaningful discussions with DSA on [redacted], which the Army evaluated as a [redacted]; (5) misapplied RFP evaluation criteria to deny DSA [redacted]; (6) did not conduct a proper price/technical trade-off analysis; and (7) did not sufficiently analyze and document the price/technical trade-off as support for its best value determination. AR tab 59, DSA Protest letter at 12401.

21. On May 7, 2008, despite the fact that no Motion to Dismiss was filed against any aspect of DSA's protest, the GAO unilaterally issued an order that the Agency Report as to DSA should not include information regarding the evaluation of any other offeror's proposals.

Amongst the six protesters, only the Agency Reports submitted to two of the protesters included the proposals and evaluation documents for certain of the awardees. AR tab 59, DSA Comments and First Supplemental Protest at 12443, 12447 n.1, 12450 n.2.

22. On June 2, 2008, DSA filed its Comments on the Agency Report and First Supplemental Protest, adding the following new protest ground: the Army conducted an improper best value tradeoff for DSA by deviating from the factor weighting scheme established in the RFP and minimizing or ignoring factors in which DSA excelled. AR tab 59, DSA Comments and First Supplemental Protest at 12431.

23. On June 3, 2008, Femme Comp Inc. filed its Complaint in this Court asserting that its proposal in response to the RFP was improperly eliminated from the competitive range.

24. On June 5, 2008, the GAO dismissed the protest of DSA and other parties in light of Femme Comp's pending protest in this Court.

**LACK OF MEANINGFUL DISCUSSIONS**

**[redacted] Factor**

25. Out of [redacted] IFNs and the responses of the twelve (12) offerors in the competitive range, Wyle, BAH, and SRA [redacted]. AR tab 21, IFNs. Wyle's IFNs and revised proposals pages number [redacted], so one of twelve offerors (8.33%) submitted [redacted]% of the total pages. The IFNs and responses for BAH and SRA numbered [redacted] and [redacted] pages, respectively. *Id.* DSA's IFNs and revised proposal pages, on the other hand, total [redacted] pages, or [redacted]% of the total pages. *Id.*

26. The Source Selection Plan defines a "deficiency" as follows:

[redacted]

AR tab 4, Source Selection Plan at 402.

27. In the comparison of DSA (code P3) and SRA (code P4), the Source Selection Authority ("SSA") raised the issue of DSA's [redacted] in comparison with SRA no fewer than three times:

[redacted]

[redacted]

AR tab 39, Source Selection Decision Document ("SSDD") at 10527 (emphasis added).

28. This is true as well with respect to the SSA's comparison of DSA with BAH (code PY), where [redacted]:

[redacted]

[redacted]

[redacted]

*Id.* at 10534 (emphasis added).

29. Similarly, with respect to the SSA's comparison of DSA and Wyle (code PS), the same pattern of [redacted] is continued. In addition, the SSA even [redacted]

[redacted]

[redacted]

*Id.* at 10548 (emphasis added).

Notwithstanding that the SSA clearly viewed [redacted], she did not address this issue at all in discussions with DSA.

[redacted] **<u>Factor</u>**

30. In the Source Selection Evaluation Board ("SSEB") Final Evaluation Consensus, the document in which the rating [redacted] was assigned to DSA, the rating is explained as follows:

[redacted]

[redacted]

AR tab 20, SSEB Final Evaluation Consensus, at 10157 (emphasis added).

31. The Source Section Authority followed the SSEB's analysis by including the following in the Source Selection document:

[redacted]

AR, tab 39, SSDD at 10504.

32. The Source Selection Plan defines a weakness as follows:

[redacted]

AR tab 4, Source Selection Plan at 402.

33. DSA had included [redacted] as part of its initial proposal. AR tab 16, DSA proposal at 4260.

34. Under Factor [redacted], the difference between each rating is [redacted]:

[redacted]

AR tab 4, Source Selection Plan at 399-400.

Notwithstanding that the SSA clearly viewed [redacted] as material in comparing DSA with Awardees, she did not address this issue at all in discussions with DSA.

**THE EVALUATION CRITERIA IN THE RFP WITH RESPECT TO THE PRICE/NON-PRICE FACTOR TRADEOFF**

**Tradeoff Analysis With Respect To DSA And Wyle**

35. DSA was evaluated by the SSEB as [redacted] Wyle on non-price, technical factors. AR tab 36, SSEB Final Evaluation Consensus at 10149-10166, 10281-10301.

36. The SSA explained her award decisions in the SSDD by resorting to comparisons of awardees and unsuccessful awardees, factor by factor. The comparative ratings of DSA (code P3) and Wyle (code PS) are set forth in the following table, derived from the information disclosed in the SSDD:

| FACTORS/SUBFACTORS | WYLE (PS) RATING | DSA (P3) RATING |
|---|---|---|
| 1. Corporate Capability | [redacted] | |
| Subfactor One | | |
| Subfactor Two | | |
| 2. Performance Risk | | |
| 3. Technical Mgt. | | |
| Subfactor 1 | | |
| Subfactor 2 | | |
| 4. Price | | |
| 5. Small Business Par. | | |

*See* AR tab 39, SSDD.

37. DSA received [redacted] in F1, S1, while Wyle received [redacted]. AR tab 36, SSEB Final Consensus Evaluation at 10249-50, 10281-82.

38. Under F1, S2, DSA received [redacted]. Wyle received [redacted]. AR tab 36, SSEB Final Consensus Evaluation at 10251-52, 10283-84.

39. The SSA stated that [redacted] AR tab 39, SSDD at 10547. Moreover, the SSA found that [redacted] *Id.*

40. Factor 1, Corporate Capability used the following rating definitions:

[redacted]

[redacted]

AR tab 4 at 398-99.

41. The SSA did not weigh DSA's [redacted] under Factor 1 except in the following respect: [redacted] *Id.* The SSA devoted more attention to rating of Wyle: [redacted] *Id.*

42. The SSA devotes even more attention to comparison of the less important Subfactor 2:

[redacted]

*Id.*

43. The SSA's conclusion in the SSDD relating to her weighing of the comparative strengths of the Wyle and DSA proposals ignored or minimized DSA:

[redacted]

AR tab 39, SSDD at 75-76.

**Tradeoff Analysis With Respect To DSA And BAH**

44. DSA was evaluated by the Army as [redacted] BAH on the non-price, technical factors. AR tab 36, SSEB Final Evaluation Consensus at 10149-10166, 10336-10355.

45. The table below sets forth the evaluations of DSA and BAH (code PY) derived from the SSDD:

| FACTORS/SUBFACTORS | BAH (PY) RATINGS | DSA (P3) RATINGS |
|---|---|---|
| 1. Corporate Capability | [redacted] | |
| Subfactor One | | |
| Subfactor Two | | |
| 2. Performance Risk | | |
| 3. Technical Mgt. | | |
| Subfactor 1 | | |
| Subfactor 2 | | |
| 4. Price | | |
| 5. Small Business Par. | | |

AR tab 39, SSDD.

**The Army's Treatment of [redacted] with respect to Factor 1 (F1) and Subfactor 1 of Factor 1 (F1, S1).**

46. The SSA stated that [redacted] AR tab 39, SSDD at 10533. In addition, the SSA notes that [redacted] *Id.* The SSA also notes that [redacted] *Id.*

47. The SSA's "weighing" of the relative strengths of DSA based on this [redacted] rating is limited to the following:

> [redacted]

*Id.*

48. The far lengthier "weighing" of BAH's Factor 1 rating reads:

> [redacted]

*Id.*

49. The SSA stated that certain functional areas, [redacted] leaving her to conclude that BAH [redacted] *Id.*

**<u>Following the Evaluation Criteria in the RFP With Respect To the Small Business Participation Factor</u>**

50. The RFP stated that the Small Business Participation factor would be evaluated as follows:

> The amount by which the proposed percentage exceeds the overall small business category percentage and the amount by which the proposed percentages exceed the small business sub-category percentages will be considered. The assessment will include the extent to which such firms are specifically identified in the proposals; the extent of commitment to use such firms (for example, enforceable commitments are more significant than nonenforceable commitments); the extent of participation of such firms in terms of the value of the total acquisition; and, for large businesses only, an assessment of the Offerors' Small Business goals for FY 2006 for the DoD and other Federal Government agencies and the actual goals achieved.

AR tab 3, RFP, ¶ M.4.5.1 at 382.

51. The rating scheme for the Small Business Participation factor is:

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

AR, tab 4, Source Selection Plan at 401-102.

52. The small business participation proposed by the large business offerors and their evaluation ratings are as follows:

| Category of Business | RFP Goal | DSA | Bearing Point | SRA | BAH | L-3 | CSC | Wyle | SI |
|---|---|---|---|---|---|---|---|---|---|
| Small Business (inclusive of all categories below) (minimum requirement) | 20% (includes % below) | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| Small Disadvantaged Business (objective) | 6% | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| Woman-Owned Business (objective) | 5% | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| Service-Disabled Veteran-Owned Business (objective) | 3% | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| Veteran-Owned Business (objective) | 3% | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| HubZone Small Business (objective) | 1% | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| HBCU/MI (objective) | Positive Goal | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| **TOTAL AMOUNT EXCEEDING GOAL** | - | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| **FACTOR 5 RATING** | | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

*See* AR tab 39, SSDD at 10160, 10180, 10219, 10275, 10293, 10329, 10348.

53. DSA, which [redacted] the small business goals [redacted], and [redacted]

[redacted], received the [redacted]. AR tab 39, SSDD at 10160, 10348.

**BAH's [redacted] rating with respect to Factor 5 (Small Business Participation).**

54. As set forth in the SSDD, [redacted] the goals proposed by DSA and BAH [redacted]:

[redacted]

AR, tab 39, SSDD at 10534.

55. DSA's proposed goals [redacted]. AR tab 39, SSDD at 10519. However, the Army concluded that DSA deserved [redacted]. *Id.*

56. BAH only [redacted] DSA [redacted]. AR tab 39, SSDD at 10160, 10275.

**Unequal Treatment of 2006 Small Business Participation**

57. DSA's proposal provided [redacted] 2006 percentages for [redacted] Small Business Types and stated it [redacted] DSA Proposal AR tab 16, DSA proposal, ¶ 1.3 at 4402.

58. The SSEB evaluated DSA's 2006 Small Business Participation as follows:

[redacted]

AR tab 36, SSEB Final Evaluation Consensus at 10160.

59. The SSDD is [redacted] with regard to DSA's 2006 Small Business Participation. AR tab 39 at 10519.

60. The Source Selection Evaluation Board Authority gave SRA [redacted] with regard to its 2006 Small Business Participation, commenting:

[redacted]

AR tab 36, SSEB Final Consensus Evaluation at 10181.

61. The Source Selection Authority [redacted] the SSEB's rating of SRA in the Small Business Participation Factor, commenting:

[redacted]

AR tab 39, SSDD at 10520.

62. Computer Sciences Corporation ("CSC") and BearingPoint, Inc. ("BP") [redacted] 2006 Small Business Subcontracting Plan [redacted], but [redacted]. AR tab 36, SSEB Final Consensus Evaluation at 10275, 10330.

63. The Source Selection Authority [redacted] CSC and BP [redacted]. AR tab 39, SSDD at 10522-24.

DATED: July 15, 2008

Respectfully submitted,

DATA SYSTEMS ANALYSTS, INC.

By Counsel

WOMBLE CARLYLE SANDRIDGE & RICE PLLC

/s/ Holly Emrick Svetz
Holly Emrick Svetz
8065 Leesburg Pike, Fourth Floor
Vienna, VA 22182
(703) 394-2261
(703) 790-2623 (fax)

Of Counsel:
James K. Kearney
James S. Kurz

WOMBLE CARLYLE SANDRIDGE & RICE PLLC
8065 Leesburg Pike, Fourth Floor
Vienna, VA 22182
(703) 790-3310
(703) 790-2623 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of July, 2008, a copy of the foregoing DSA Statement of Facts in Support of Its Motion for Judgment on the Administrative Record was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Holly Emrick Svetz
Holly Emrick Svetz