# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FEMME COMP INC.,

TECHNICAL AND PROJECT ENGINEERING, LLC,

DATA SYSTEMS ANALYSTS, INC., and

L-3 SERVICES, INC.,

BEARINGPOINT, INC,

Plaintiffs,

v.

THE UNITED STATES,

SAVANTAGE FINANCIAL SERVICES, INC., and

BOOZ ALLEN HAMILTON, INC.

Defendants.

**REDACTED VERSION**

Case Nos. 08-409 C
08-491C
08-432C
08-454C
08-474C
Judge Margaret M. Sweeney

**PLAINTIFF DSA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

# TABLE OF CONTENTS

**Subject** **Page**


**COVER PAGE** ........ I

**TABLE OF CONTENTS** ........ II

**TABLE OF AUTHORITIES** ........ III

**PLAINTIFF DSA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD** ........ 1

**STANDARD OF REVIEW** ........ 2

**LEGAL ARGUMENT** ........ 4

**COUNT I THE ARMY FAILED TO ENGAGE IN MEANINGFUL DISCUSSIONS.** ........ 4

*A. The Army Failed to Engage in Meaningful Discussions With Respect to the* [redacted] ........ *5*

*B. The Army Failed to Engage in Meaningful Discussions with Respect to the* [redacted] *Factor.* .. *9*

**COUNT II THE ARMY FAILED TO FOLLOW THE EVALUATION CRITERIA IN THE RFP.** ........ **11**

*A. The Army Failed to Follow The Evaluation Criteria in the RFP With Respect To the Price/Non-Price Factor Tradeoff.* ........ *12*

1. The Army's Best Value Tradeoff Analysis With Respect To DSA And Wyle Was Flawed Because It Deviated From The RFP's Weighting Scheme And Reflects The Unequal Application Of The RFP's Evaluation Factors. ........ 13

2. The Army's Best Value Tradeoff Analysis With Respect To DSA And BAH Was Flawed Because It Deviated From The RFP's Weighting Scheme And Reflects The Unequal Application Of The RFP's Evaluation Factors. ........ 15

a. The Army improperly downplayed and ignored DSA's [redacted] ........ 17

*B. The Army Failed to Follow the Evaluation Criteria in the RFP With Respect To the Small Business Participation Factor.* ........ *19*

1. The Army misapplied the RFP's evaluation scheme to give Wyle a higher rating with respect to Factor 5 (Small Business Participation) than it deserved. ........ 19

2. The Army misapplied the RFP's evaluation scheme with respect to its evaluation of BAH under Factor 5 (F5). 20

3. The Army misapplied the RFP's evaluation scheme with respect to 2006 Small Business participation under Factor 5 (F5). ........ 21

**COUNT III THE BEST VALUE DECISION OF THE ARMY WAS NOT PROPERLY ANALYZED OR DOCUMENTED** ........ **22**

*A. The Army's misapplication of the RFP's evaluation and weighting scheme improperly caused the award to Wyle to be based on a* [redacted] ........ *23*

*B. The Army misapplication of the RFP's evaluation and weighting scheme improperly caused the award to BAH to be based on a* [redacted] ........ *24*

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Advanced Data Concepts, Inc. v. United States,* 43 Fed. Cl. 410 (1999), aff'd, 216 F.3d 1054 (Fed. Cir. 2000) ..... 11

*Advanced Systems Technology and Management, Inc.*, B-291529, 2002 CPD ¶ 219 ..... 11

*Analytical & Research Tech.,* 39 Fed. Cl. 34 (1997) ..... 10, 11, 12, 18

*Apptis, Inc.*, B-299457, 2008 CPD ¶ 49, 2007 ..... 10

*Ashland Sales and Serv. Co.,* B-291206, Dec. 5, 2002, 2003 CPD ¶ 36 ..... 23

*Asia Pac. Airlines v. United States*, 68 Fed. Cl. 8 (2005) ..... 3

*AT & T Corp.*, B-299542.3, 2008 CPD ¶ 65 ..... 10

*BAE Tech. Servs., Inc.*, B-296699, Oct. 5, 2006 CPD ¶ 91 ..... 12

*Bannum, Inc. v. United States*, 404 F.3d 1346 (Fed. Cir. 2005) ..... 3

*Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007) ..... 11

*Carlisle v. United States*, 66 Fed. Cl. 627 (2005) ..... 4

*Chemical Demilitarization Assoc.,* B-277700, 1997 U.S. Comp. Gen. LEXIS 516 ..... 23

*Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 339 (1997) ..... 2

*CWIS, LLC*, B-287521, 2001 CPD ¶ 119 ..... 11

*Cylink Corp.*, B-242304, 91-1 CPD ¶ 384 ..... 11

*Data Gen. Corp. v. Johnson*, 78 F.3d 1556 (Fed. Cir. 1996) ..... 3

*Doe v. United States*, 66 Fed. Cl. 165 (2005) ..... 4

*Dubinsky v. United States*, 43 Fed. Cl. 243 (1999) ..... 5, 10, 11, 12

*Emerald Coast Finest Produce Co. Inc. v. United States*, 75 Fed. Cl. 549 (2007) ..... 12

*Galen Medical Associates, Inc. v. United States,* 74 Fed. Cl. 377 (2006) ..... 11

*Glasslock, Inc.*, B-299931, 2007 WL 42000104 (Comp. Gen.) ..... 13

*Grove Resource Solutions, Inc.*, B-296228, Jul. 1, 2005, 2005 U.S. Comp. Gen Lexis 120 ..... 7

*Hamilton Sundstrand Power Sys. v. United States*, 75 Fed. Cl. 512 (2007) ..... 11, 21

*Impresa Construzioni Geom. v. United States*, 238 F.3d 1324 (Fed. Cir. 2001) ..... 2

*Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312 (Fed. Cir. 2003) ..... 3

*Integrated Concepts & Research Corporation*, B-309803, 2007 WL 5273748 (Comp. Gen.) ..... 7, 8

*Intl. Outsourcing Servs., LLC v. United States*, 69 Fed. Cl. 40 (2005) ..... 3, 4

*Karrar Systems Corporation*, B-310661, Jan. 3, 2008, 2008 U.S. Comp. Gen LEXIS 120 at *5-6 .......... 6

*Kentron Haw., Ltd. v. Warner*, 480 F.2d 1166 (D.C. Cir. 1973)) .......... 2

*Litton Systems, Inc.,* B-256709, 94-2 CPD ¶ 60 .......... 23

*Metro Mach. Corp.,* B-281872 *et al.,* Apr. 22, 1999, 99-1 CPD ¶ 101 .......... 7

*Miller-Holzwarth, Inc. v. United States*, 42 Fed. Cl. 643 (1999) .......... 2

*Multimax, Inc. et al*, B- 298249.6, 2006 CPD ¶ 165 .......... 7, 10

*Night Vision Corp. v. United States*, 68 Fed. Cl. 368 (2005) .......... 3

*PAI Corp.,* B-298349, Aug. 18, 2006, 2006 CPD ¶ 124 .......... 10

*Preferred Sys. Solutions, Inc.,* B-292322 *et al.,* Aug. 25, 2003, 2003 CPD ¶ 166 .......... 12, 18

*Price Waterhouse,* B-220049, Jan. 16, 1986, 86-1 CPD ¶ 54 .......... 7

*ProTech Corp.*, B-294818, Dec. 30, 2004, 2005 CPD ¶ 73 .......... 12

*Rex Serv. Corp. v. United States*, 448 F.3d 1305 (Fed. Cir. 2006) .......... 3

*Scott v. United States*, 78 Fed. Cl. 151 (2007) .......... 3

*Serco Inc. v. United States*, 81 Fed. Cl. 463 (2008) .......... 16

*Smiths Detection, Inc.,* B-298838, B-298838.2, Dec. 22, 2006, 2007 CPD ¶ 5 .......... 10

*SOS Interpreting, Ltd.*, B-293026, Jan. 20, 2004, 2005 CPD ¶ 26 .......... 11

*Symplicity Corp.,* B-297060, Nov. 8, 2005, 2005 CPD ¶ 203 .......... 10

*The Faxon Co.*, B-227835.3, Nov. 2, 1987, 87-2 CPD ¶ 425 .......... 11

*Trijicon, Inc.*, B-244546, Oct. 25, 1991, 91-2 CPD ¶ 375 .......... 12, 13, 18

*TRW, Inc.,* B-25404.2, 94-1 CPD ¶ 18 .......... 23

*W.D.C. Realty Corp.*, B-225468, 87-1 CPD ¶ 248 .......... 11

*Wiltex Inc.*, B-297234.2; B-297234.3, Dec. 27, 2005, 2006 CPD ¶ 13 .......... 12

**Statutes**

10 U.S.C. § 2305(b)(1) .......... 11, 12, 18

28 U.S.C. § 1491(b)(1) (1994 & Supp. IV 1998) .......... 2

41 U.S.C. § 253b(a) .......... 12, 18

5 U.S.C. § 706(2)(A) .......... 2

**Federal Rules of Civil Procedure**

Federal Rule of Civil Procedure 56(a) .......... 3

**Federal Acquisition Regulation**

FAR 15.305 .......... 11, 22

FAR 15.305(a) .......... 11

FAR 15.306(d) .......... 4

FAR 15.306(d)(2) .......... 6

FAR 15.306(d)(3) .......... 5, 8, 9, 10

FAR 15.306(e)(1) .......... 4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| FEMME COMP INC., | ) | |
| TECHNICAL AND PROJECT ENGINEERING, LLC, | ) | |
| DATA SYSTEMS ANALYSTS, INC., and | ) | |
| L-3 SERVICES, INC., | ) | |
| BEARINGPOINT, INC, | ) | Case Nos. 08-409 C |
| | ) | 08-491C |
| Plaintiffs, | ) | 08-432C |
| | ) | 08-454C |
| v. | ) | 08-474C |
| | ) | Judge Margaret M. Sweeney |
| THE UNITED STATES, | ) | |
| SAVANTAGE FINANCIAL SERVICES, INC., and | ) | |
| BOOZ ALLEN HAMILTON, INC. | ) | |
| Defendants. | ) | |

**PLAINTIFF DSA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD[1]**

Plaintiff, Data Systems Analysts, Inc. ("DSA"), by and through its undersigned counsel, submits this Memorandum in Support of its Motion for Judgment on the Administrative Record, seeking judgment against Defendant, United States of America acting through the Department of the Army, (hereinafter the "Government" or "Army"), for injunctive and declaratory relief. DSA seeks a declaration that the Army's contract award to Booz Allen Hamilton ("BAH"), SRA International, Inc. ("SRA"), and Wyle Information Systems, LLC ("Wyle") (collectively referred

[1] Including Table of Contents and Table of Authorities pursuant the Court's July 18, 2008 Order.

to herein as "Awardees")[2] pursuant to Request for Proposals No. W91QUZ-07-R-0007 (the "RFP") issued by the U.S. Army, Army Contracting Agency, Information Technology, E Commerce, and Commercial Contracting Center ("ITEC4") was unlawful and should be permanently enjoined because the competitive source selection process was flawed and contrary to applicable regulations and statutes.

**STANDARD OF REVIEW**

Pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1) (1994 & Supp. IV 1998), review of post-award bid protest actions is based on the administrative record developed by the relevant agency. See *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 339, 342 (1997). The standard of review prescribed in the Administrative Procedures Act authorizes a court to hold unlawful and set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at 341; 5 U.S.C. § 706(2)(A). *See also Miller-Holzwarth, Inc. v. United States*, 42 Fed. Cl. 643, 649 (1999).

Under the standard set forth above, when a disappointed offeror alleges that the procurement procedure involved a violation of regulation or procedure, the plaintiff must demonstrate a "clear and prejudicial violation of applicable statutes or regulations." *Impresa Construzioni Geom. v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001) (*quoting Kentron Haw., Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C. Cir. 1973)). The Court will determine whether the disappointed offeror met its burden of proof to show by a preponderance of the evidence that the agency procurement decision giving rise to the protest was not in accordance with the law,

[2] DSA is not a small business and therefore does not challenge the awards made to Savantage Financial Services, Inc. and Binary Group, Inc. The RFP reserved two of the contract awards for small businesses. For that reason, DSA challenges only the three open competition awards.

resulting in a significant and prejudicial error. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351, 1357 (Fed. Cir. 2005).

A plaintiff can establish prejudice by showing that it had a "substantial chance" of receiving the contract award if the alleged errors in the bidding process were corrected. *Bannum*, 404 F.3d at 1351; *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003); *Scott v. United States*, 78 Fed. Cl. 151, 154 (2007) (*quoting Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006)). Where, as in this case, judgment is made on the administrative record, "there must be facts in the record that demonstrate that the plaintiff had a substantial chance of obtaining the contract." *Night Vision Corp. v. United States*, 68 Fed. Cl. 368, 392 (2005). The "substantial chance" requirement does not require a showing that, "but for the alleged error, the protestor would have been awarded the contract." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996). Rather, the disappointed offeror must only "demonstrate more than a 'mere possibility that [it] would have received the contract but for the error [in the procurement process].'" *Asia Pac. Airlines v. United States*, 68 Fed. Cl. 8, 18 (2005) (*quoting Data Gen. Corp.*, 78 F.3d at 1562.

Finally, the existence of a genuine issue of material fact does not preclude the Court from deciding a motion for judgment on the administrative record and inferences must not be weighed in favor of the non-moving party, in contrast with a motion for summary judgment under the Federal Rule of Civil Procedure 56(a). *Bannum*, 404 F.3d at 1355-57; *see also Intl. Outsourcing Servs., LLC v. United States*, 69 Fed. Cl. 40, 45-46 (2005). Rather, such questions must be resolved by reference to the administrative record, as properly supplemented "as if [the Court of Federal Claims] were conducting a trial on [that] record." *Bannum*, 404 F.3d at 1357; *see also*

*Int'l Outsourcing*, 69 Fed. Cl. at 46; *Carlisle v. United States*, 66 Fed. Cl. 627, 631 (2005); *Doe v. United States*, 66 Fed. Cl. 165, 174-75 (2005).

## LEGAL ARGUMENT

### COUNT I
### THE ARMY FAILED TO ENGAGE IN MEANINGFUL DISCUSSIONS.

Although the Army has broad discretion to determine the content and extent of discussions, its judgments with respect to the conduct of discussions are subject to review to determine whether they were reasonable. It is a fundamental precept of negotiated procurements that discussions, when conducted, must be meaningful; that is, discussions must identify deficiencies and significant weaknesses in each offeror's proposal that could reasonably be addressed so as to materially enhance the offeror's potential for receiving award.

Exchanges after the competitive range has been determined may not favor one offeror over another. FAR 15.306(e)(1). By using IFNs to lead Wyle to so substantially revise its technical proposal (Wyle submitted [redacted]% of IFN and proposal revision pages out of 12 contractors) and significantly assisting BAH and SRA, it is clear that the Army's intent was to [redacted]. SOF ¶ 25. The Army not only failed to provide similar assistance to DSA with respect to its technical proposal (DSA submitted [redacted]% of IFN and proposal revision pages out of 12 contractors), but completely failed to provide any information regarding [redacted] that would have caused DSA to provide the best value to the Army. *Id.* Importantly, [redacted] is specifically included in the list of permitted bargaining topics for post-competitive range changes with offerors. FAR 15.306(d). In this matter, the Army's conduct demonstrated that it favored Wyle and BAH over DSA.

A. **The Army Failed to Engage in Meaningful Discussions With Respect to the [redacted] Factor.**

The Army failed to conduct meaningful discussions with DSA on the [redacted] factor. Had they occurred, meaningful discussions on [redacted] should have resulted in the award of a contract to DSA. With respect to [redacted], the Army only issued Items for Negotiation ("IFNs") to DSA addressing [redacted], and did not address the critical issue of [redacted]. Statement of Facts ("SOF") ¶¶ 9, 10.

Based on the evaluation materials disclosed in the Administrative Record, it is now clear that [redacted] became a significant factor in the Army's comparative evaluation of proposals and, in fact, a deciding factor in the outcome of the Army's best value assessment of DSA's proposal. Although the Army self-servingly chose not to label DSA's [redacted] as unreasonable or a weakness, it is clear that it in fact considered it a material weakness of DSA's proposal. FAR 15.306(d)(3). As such, the Army was obligated to address the [redacted] with DSA because it was a deficiency that could reasonably be addressed so as to materially enhance DSA's potential for receiving award. *See Dubinsky v. United States*, 43 Fed. Cl. 243, 275 (1999) (holding that without notice of material deficiencies, the agency's discussions were not meaningful).

The Army does not dispute that it held discussions with the offerors in the competitive range. However, the Army did not raise the issue of DSA's [redacted] during the discussion period, and thus DSA had no way of knowing it would be used in the evaluation scheme to its disadvantage. In the GAO proceeding, the Army has argued that [redacted]

[redacted]. Because DSA had a [redacted] proposal, however, the Army should have addressed DSA's [redacted] during discussions in order to satisfy its obligation to negotiate the best value for the Government. FAR 15.306(d)(2) ("The primary objective of discussions is to maximize the Government's ability to obtain best value, based on the requirement and the evaluation factors set forth in the solicitation").

It is clear that [redacted] was a significant factor in the Army's evaluation of proposals – more so than the RFP intended – and that [redacted] was in fact considered to be a material weakness of DSA's proposal. The Administrative Record is instructive as to the significance of [redacted] as an evaluation factor, notwithstanding that [redacted]. In the Source Selection Evaluation Board's ("SSEB") comparison of DSA (code P3) and SRA (code P4), for example, the Source Selection Authority ("SSA") raised the issue of DSA's [redacted] in comparison with SRA no fewer than three times. SOF ¶ 27. This is true as well with respect to the SSA's comparison of DSA with BAH (code PY), where [redacted] is mentioned no fewer than four times. SOF ¶ 28. Similarly, with respect to the SSA's comparison of DSA and Wyle (code PS), the same pattern of frequent reference to DSA's [redacted] is continued. In addition, the SSA even characterizes the [redacted] SOF ¶ 29.

The admitted [redacted] of DSA's [redacted] in the Army's best value assessments, and the clear indications in the record that the Army believed DSA's [redacted] to be [redacted] (or, in the SSA's own words [redacted]), distinguish this situation from the cases cited by the Army in its Legal Memorandum filed in the GAO proceedings. In *Karrar Systems Corporation*, B-310661, B-310661.2, Jan. 3, 2008, 2008 U.S. Comp. Gen LEXIS 120 at *5-6, the agency was found not to have had an obligation to discuss the offeror's [redacted] because there was ". . . no indication in the record that the Army

considered Karrar's [redacted]; it therefore was not required to question Karrar's [redacted] during discussions." *See also Grove Resource Solutions, Inc.*, B-296228, B-296228.2, Jul. 1, 2005, 2005 U.S. Comp. Gen Lexis 120 (no indication that the agency recognized the offeror's [redacted] as materially affecting best value determination). Here, the record reflects numerous indications that the Army viewed DSA's [redacted].

Moreover, the Army not only did not discuss DSA's [redacted], but it misled DSA by submitting IFNs directed at [redacted]. SOF ¶¶ 9, 10. In *Multimax, Inc. et al*, B- 298249.6, 2006 CPD ¶ 165, the Army used the written IFN protocol for discussions and issued IFNs regarding specific labor rates, leading offerors to adjust [redacted] but also to assume that others not questioned were not of concern. In that case, the GAO stated:

> It is a fundamental precept of negotiated procurements that discussions, when conducted, must be meaningful; that is, discussions must identify deficiencies and significant weaknesses in each offeror's proposal that could reasonably be addressed so as to materially enhance the offeror's potential for receiving award. . . . An agency fails to conduct meaningful discussions where it fails to apprise an offeror that [redacted] . . .

*See also Price Waterhouse,* B-220049, Jan. 16, 1986, 86-1 CPD ¶ 54 at 6-7; *Metro Mach. Corp.,* B-281872 *et al.,* Apr. 22, 1999, 99-1 CPD ¶ 101 at 6.

In a case recently released to the public, the GAO held that the agency was not required to advise the protester during discussions that [redacted] was not competitive. *Integrated Concepts & Research Corporation*, B-309803, 2007 WL 5273748 (Comp. Gen.). However, the *Integrated Concepts* case is not applicable here because the criteria the Army used

to evaluate [redacted] in this RFP was different than that used by the agency in *Integrated Concepts*. In this RFP, [redacted] was measured absolutely as part of Factor [redacted] and in comparison to the other offerors' [redacted], whereas in *Integrated Concepts* cost was not evaluated in comparison to the other bidders' [redacted]. In *Integrated Concepts*, the agency determined the [redacted] by deciding whether the "[redacted] proposed by ICRC's [redacted] were consistent with the firm's likely actual [redacted]." *Id.* at *5. The technical approach Integrated Concepts chose required [redacted] than the approach the winning bidder chose. *Id.* Additionally, [redacted], the GAO noted in *Integrated Concepts*, "that the contemporaneous evaluation record indicates that the agency did not consider the matter to be a proposal deficiency." *Id.* Moreover, the agency in *Integrated Concepts* did notify the protester that "the proposed solution to the sample task was an acceptable one, but one that involved a [redacted]." *Id.* As a result, *Integrated Concepts* was given notice in discussions that the [redacted], was [redacted]. DSA was given no such notice.

The SSA characterized the DSA proposal [redacted] SOF ¶ 29. The Army defined a deficiency to be, "[redacted]" SOF ¶ 26. Therefore, the Army failed to meet the minimum FAR requirements by neither indicating nor discussing the [redacted] with DSA. FAR 15.306(d)(3) ("At a minimum, the contracting officer must . . . indicate to, or discuss with, each offeror still being considered for award, deficiencies, significant weaknesses, and adverse past performance information to which the offeror has not yet had an opportunity to respond").

Here, DSA's [redacted] was in fact viewed by the Army as [redacted] in the context of the best value determination. This was an issue that the

Army could reasonably have addressed in discussions and doing so would have materially enhanced DSA's potential for receiving award. The Army acted unreasonably and failed to follow FAR 15.306(d)(3) by failing to conduct discussions with DSA regarding [redacted].

**B. The Army Failed to Engage in Meaningful Discussions with Respect to the [redacted] Factor.**

The Army identified no weaknesses in the substance of DSA's [redacted] Factor, and DSA was given no opportunity to improve its competitive position with respect to particular [redacted] factors which, ultimately, the Army found to be material in its determination not to award a contract to DSA.

The Army's assertion that, in its evaluation of DSA's [redacted] Factor there was no weakness that should have been disclosed in discussions, is not supported by the facts. Both the SSA and the SSEB explicitly state that [redacted]. SOF ¶¶ 30, 31.

The Army defined a "weakness" as [redacted]. SOF ¶ 32. The SSEB specifically treated the ratings of DSA's [redacted], as a weakness in its evaluation in that it was sufficiently material to prevent DSA from receiving a [redacted] rating.

DSA included [redacted] as part of its proposal from the start. SOF ¶ 33. Under Factor [redacted], the difference between each rating is [redacted]. SOF ¶ 34. The SSEB clearly stated that it viewed the [redacted] information of [redacted] and the SSA concurred. Therefore, it was viewed as a flaw that increased the risk of performance in the eyes of the

SSEB. Because the [redacted] of [redacted] was a weakness not addressed in discussions, with respect to Factor [redacted], [redacted], DSA was put at a competitive disadvantage by the lack of meaningful discussions.

When discussions are conducted, they must at a minimum identify deficiencies, significant weaknesses, and adverse past performance information in each competitive-range offeror's proposal. FAR 15.306(d)(3); *see Dubinsky,* 43 Fed. Cl. at 275; *AT & T Corp.*, B-299542.3, 2008 CPD ¶ 65; *Multimax, Inc., et al.*, B-298249.6 *et al.*, Oct. 24, 2006, 2006 CPD ¶ 165 at 12; *PAI Corp.*, B-298349, Aug. 18, 2006, 2006 CPD ¶ 124 at 8. Discussions must be "meaningful," that is, they must be sufficiently detailed so as to lead an offeror into the areas of its proposal requiring amplification or revision. *See Analytical & Research Tech.*, 39 Fed. Cl. 34, 48 (1997) (holding agencies "must generally lead offerors into the areas of their proposals requiring amplification or correction, which means that discussions should be as specific as practical"); *Smiths Detection, Inc.*, B-298838, B-298838.2, Dec. 22, 2006, 2007 CPD ¶ 5 at 12; *Symplicity Corp.*, B-297060, Nov. 8, 2005, 2005 CPD ¶ 203 at 8. Where an offeror has had no chance to respond to [redacted], the GAO has held that discussions are required. *Apptis, Inc.*, B-299457, 2008 CPD ¶ 49, 2007 (agency's discussions with protester were not meaningful where the agency found significant weaknesses in the protester's proposal but failed to identify them during discussions and give the firm the opportunity to comment on [redacted] to which it previously had not had an opportunity to respond).

DSA was prejudiced by the lack of discussions regarding [redacted] in that it deprived DSA of the opportunity to provide an explanation that would increase its score to [redacted].

**COUNT II**
**THE ARMY FAILED TO FOLLOW THE EVALUATION CRITERIA IN THE RFP.**

All offerors should have been treated equally and subject to a common basis for the preparation of their proposals. *See Hamilton Sundstrand Power Sys. v. United States*, 75 Fed. Cl. 512, 516 (2007) (stating "it is well-established ... that a 'contracting agency must treat all offerors equally, evaluating proposals evenhandedly against common requirements and evaluation criteria.'"); *Galen Medical Associates, Inc. v. United States,* 74 Fed. Cl. 377, 390 (2006); *Advanced Data Concepts, Inc. v. United States,* 43 Fed. Cl. 410, 422 (1999), aff'd, 216 F.3d 1054 (Fed. Cir. 2000); *W.D.C. Realty Corp.*, B-225468, 87-1 CPD ¶ 248 at 5; *Cylink Corp.*, B-242304, 91-1 CPD ¶ 384 at 4; *The Faxon Co.*, B-227835.3, Nov. 2, 1987, 87-2 CPD ¶ 425 at 4. Where a solicitation provides a statement of all significant factors and subfactors that the agency will consider in evaluating competitive proposals, and the relative importance accorded each factor and subfactor, the Government must adhere to this evaluation scheme when conducting evaluations. *See* FAR 15.305. *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007) (citing 10 U.S.C. § 2305(b)(1) for the proposition that agencies must "evaluate ... proposals and make an award based solely on the factors specified in the solicitation"). *See also*, *Dubinsky,* 43 Fed. Cl. at 266; *Analytical & Research Tech.,* 39 Fed. Cl. at 44; *SOS Interpreting, Ltd.*, B-293026, Jan. 20, 2004, 2005 CPD ¶ 26 at 10-11; *Advanced Systems Technology and Management, Inc.*, B-291529, 2002 CPD ¶ 219 at 2; *CWIS, LLC*, B-287521, 2001 CPD ¶ 119 at 2. The FAR extends this requirement to include both evaluation factors and subfactors. *See* FAR 15.305(a) ("An agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the solicitation."). These CICA requirements are in accordance with the fundamental principle that the Government "may

not solicit proposals on one basis and make award on another basis." *See Dubinsky,* 43 Fed. Cl. at 266.

Thus, where an agency, like the Army, accords a factor less weight than intended under the RFP, its best value trade-off determination is flawed. *See Emerald Coast Finest Produce Co. Inc. v. United States*, 75 Fed. Cl. 549 (2007) (finding that the Government's evaluation of proposals was erroneous because it did not follow the terms set forth in the solicitation); *ProTech Corp.*, B-294818, Dec. 30, 2004, 2005 CPD ¶ 73 at 8. Here, the Army failed to follow the clear evaluation criteria stated in the RFP, thereby prejudicing DSA. As a result, the protest should be sustained. *See Wiltex Inc.*, B-297234.2; B-297234.3, Dec. 27, 2005, 2006 CPD ¶ 13 (protest sustained where awardee's proposal failed to address material solicitation requirements and the agency failed to treat offerors equally by making award to the awardee despite deficiencies in proposal); *BAE Tech. Servs., Inc.*, B-296699, Oct. 5, 2006 CPD ¶ 91 (protest sustained where agency applied a more exacting standard in evaluating adequacy of substantiation for protester's proposed initiatives than it did in evaluating awardee's substantiation).

## A. <u>The Army Failed to Follow The Evaluation Criteria in the RFP With Respect To the Price/Non-Price Factor Tradeoff.</u>

The Army was required to adhere to the evaluation criteria stated in the RFP, not only in the evaluation of each Factor, but also in the price/non-price trade-off. *See* 10 U.S.C. § 2305(b)(1) ; 41 U.S.C. § 253b(a) (1994). *See also Analytical & Research Tech.,* 39 Fed. Cl. at 44; *Preferred Sys. Solutions, Inc.,* B-292322 *et al.,* Aug. 25, 2003, 2003 CPD ¶ 166; *Trijicon, Inc.*, B-244546, Oct. 25, 1991, 91-2 CPD ¶ 375 at 5. The RFP required the Army to (1) weigh the "non-price factors significantly more important than the price" and (2) to give "non-price factors far more consideration than another criterion." SOF ¶¶ 14, 15. It was improper,

therefore, for the Army to select [redacted] amongst proposals that were [redacted]. *Glasslock, Inc.*, B-299931, 2007 WL 42000104 (Comp. Gen.); *Trijicon, Inc.*, B-244546, 9102 CPD ¶ 375 at 5, 7.

The Army has not asserted that DSA's [redacted] Wyle or BAH, so it was inconsistent with the RFP evaluation criteria for it to [redacted]. SOF ¶ 16. The Source Selection Decision Document purports to apply the evaluation criteria, but fails to actually take into account the weight of the factors.

**1. The Army's Best Value Tradeoff Analysis With Respect To DSA And Wyle Was Flawed Because It Deviated From The RFP's Weighting Scheme And Reflects The Unequal Application Of The RFP's Evaluation Factors.**

DSA was evaluated by the SSEB as [redacted]. SOF ¶ 35. DSA's [redacted] advantage of Wyle's proposal.

The SSA explained her award decisions in the Source Selection Decision Document by resorting to comparisons of awardees and unsuccessful awardees. Strictly adhering to the evaluation scheme set forth in the RFP, there is no doubt that DSA had [redacted]. DSA was rated [redacted], the most important non-price factor, and was also rated [redacted] Subfactor 1 of Factor 1, which was intended to be more important than Subfactor 2. SOF ¶ 36. Wyle received [redacted] for this most important of factors, in greatest part because [redacted] for Subfactor 1. *Id.* With the exceptions of Factor 1, the most important factor, [redacted], DSA and Wyle were [redacted] based on the ratings evaluation.

The Army clearly found, as the SSA admits, that [redacted] SOF ¶ 38. Moreover, the SSA concedes that [redacted] *Id.*

The only statement remotely suggesting that the SSA at all weighed DSA's [redacted] Factor 1 is the following [redacted] SOF ¶ 40. Other than this begrudging nod to DSA's [redacted] on this most important of technical factors, there is nothing in the Source Selection Decision Document to suggest that the SSA [redacted] under this factor.

To the contrary, the SSA devoted more attention in her comparative analysis to building up [redacted] Wyle. For example, she stated in the very next sentence following her begrudging nod to DSA's [redacted] the following: [redacted] SOF ¶ 41. Rather than discussing any benefit of DSA's significant strengths, the SSA attempts to make Wyle's [redacted] seem equivalent.

In contrast, with respect to the less important Factor 2, the SSA [redacted] over Wyle's [redacted] by specifically considering every strength [redacted] at length and completely ignoring the many significant strengths of DSA. SOF ¶ 42. The SSA downplayed or ignored the many significant strengths of DSA's proposal [redacted] identified by the SSEB. It is apparent by the SSA's own [redacted] in the Source Selection

Decision Document relating to her weighing of the comparative strengths of the [redacted] proposals that much was improperly ignored or minimized. SOF ¶ 43. The SSA stated that she [redacted] *Id.* The SSA cannot have it both ways. Either she [redacted] weigh the ratings in a manner consistent with the RFP evaluation criteria.

It is clear that the SSA turned the RFP's weighting scheme totally on its head by allowing the [redacted] to trump both DSA's [redacted] on the [redacted] and the SSEB's overall conclusion [redacted] and the [redacted] proposal under Factor 1.

**2. The Army's Best Value Tradeoff Analysis With Respect To DSA And BAH Was Flawed Because It Deviated From The RFP's Weighting Scheme And Reflects The Unequal Application Of The RFP's Evaluation Factors.**

In comparison of [redacted], there is absolutely no discussion of the fact that non-price factors are significantly more important than price. The SSA goes to a tortured extreme to downplay the [redacted] in the only instance where weight of the factors and subfactors is mentioned. This incomprehensible explanation demonstrates the Army's apparent determination to award a contract to BAH, [redacted].

DSA was evaluated by the Army as [redacted]. SOF ¶ 44. DSA's [redacted] should have been sufficient to [redacted]. "The non-price evaluation factors are *significantly more*

*important* than the Price factor." SOF ¶ 14. But, the Army failed to conduct a proper trade-off analysis and BAH, rather than DSA, was awarded a contract. *See, e.g., Serco Inc. v. United States*, 81 Fed. Cl. 463, 498-9 (2008) ("Of course, it is conceivable that the SSA, in his own mind, made such cost/benefit comparisons, but merely failed to capture them on paper. But, that too would violate the FAR and its documentation requirements. To comply with the FAR, documentation must 'include the rationale for any business judgments and tradeoffs made, including the benefits associated with additional costs.'").

[redacted]. DSA received [redacted]. BAH, in contrast, received [redacted]. SOF ¶¶ 45, 46. The only [redacted] which BAH [redacted] DSA was with respect [redacted]. SOF ¶ 45.

Similar to the SSA's [redacted] the SSA's evaluation and assessment of DSA and BAH shows a total disregard for the RFP's weighting scheme. The [redacted] assigned to DSA were minimized and ignored, whereas the [redacted] BAH were "boosted." The underlying goal of the SSA appears not to have been the equal evaluation of the competitors under the RFP's evaluation scheme, but the "boosting" of BAH's [redacted] in order to be able to find it [redacted] and award it a contract on [redacted].

**a. The Army improperly downplayed and ignored DSA's [redacted].**

The Army clearly found, as the SSA admits, that [redacted] SOF ¶ 46. Moreover, the SSA notes that [redacted] *Id.* Significantly, the SSA also notes [redacted] *Id.* The extent, however, of the SSA's "weighing" of the relative strengths of DSA based on [redacted] is limited to the following:

> [redacted]

SOF ¶ 47.

The rest of the SSA's analysis of DSA's [redacted] is devoted to the minimizing of [redacted] and the improper "boosting" of BAH's [redacted]. This is evident in the far lengthier "weighing" of BAH's [redacted] that is unabashedly designed [redacted] DSA rating by mentioning [redacted] in comparison to BAH and to "upgrade" BAH by listing every positive aspect of its [redacted] possible.

> [redacted]

[redacted]

SOF ¶ 48.

The foregoing paragraph is striking because it reveals the SSA's undisguised attempt to justify BAH's [redacted]. There is no attempt to weigh the advantages to the Government of DSA's [redacted]. The only strengths the SSA apparently chose to highlight in her record of this assessment are those she identified in BAH's evaluation. Even then, she admitted that for certain functional areas, [redacted] leaving her to conclude only that BAH "[redacted]" SOF ¶ 50.

While the evaluation of proposals is primarily within the discretion of the contracting agency, an agency may not announce in the RFP that one evaluation scheme will be used, and then follow another; once offerors are informed of the criteria against which their proposals will be evaluated, the agency must adhere to those criteria in evaluating proposals and making its award decision. 10 U.S.C. § 2305(b)(1); 41 U.S.C. § 253b(a); *See Analytical & Research Tech.*, 39 Fed. Cl. at 44; *Preferred Sys. Solutions, Inc.*, B-292322 *et al.*, Aug. 25, 2003, 2003 CPD ¶ 166; *Trijicon, Inc.*, B-244546, Oct. 25, 1991, 91-2 CPD ¶ 375 at 5. DSA was unfairly prejudiced by the improper trade-off provided by the SSA, which clearly was to DSA's detriment.

**B. The Army Failed to Follow the Evaluation Criteria in the RFP With Respect To the Small Business Participation Factor.**

**1. The Army misapplied the RFP's evaluation scheme to give Wyle a higher rating with respect to Factor 5 (Small Business Participation) than it deserved.**

The RFP stated that in evaluating Factor 5, "[t]he amount by which the proposed percentage exceeds the overall small business category percentage and the amount by which the proposed percentages exceed the small business sub-category percentages will be considered. SOF ¶ 50. To receive a "good" rating, the offeror was required "to significantly exceed some solicitation goals" and to receive a "fair" rating, the offeror was required to "meet or exceed all solicitation goals." SOF ¶ 51.

Wyle was improperly awarded [redacted] with respect to Factor 5 Small Business Participation. Wyle's proposal [redacted] SOF ¶ 52. Wyle [redacted]. *Id.* The HBCU/MI goal was simply to be a positive number, which it is impossible to exceed. *Id.*

Had Wyle not been awarded [redacted], the comparative evaluations of Wyle and DSA, and the Army's best value determinations, would necessarily have been different. DSA was prejudiced in its evaluation to the extent that Wyle received a higher rating on a factor than it should have. Not assigning [redacted] to Wyle, along with the SSA's minimizing and ignoring DSA's [redacted], materially and adversely impacted DSA's chances for a contract award.

**2. The Army misapplied the RFP's evaluation scheme with respect to its evaluation of BAH under Factor 5 (F5).**

Under Factor 5 Small Business Participation, DSA was [redacted] BAH [redacted]. However, as set forth in the Source Selection Decision Document, the [redacted]:

[redacted]

SOF ¶ 54.

The above justification for BAH's [redacted] to DSA's – in no way comports with the RFP's requirements [redacted]. It is clear that, under the RFP, an offeror could qualify for an "outstanding" rating only if it [redacted]. SOF ¶ 51.

DSA's proposed [redacted]. SOF ¶ 52. However, Army officials told DSA at its debriefing that DSA deserved [redacted] as opposed to [redacted] because its proposed goal [redacted]. It defies reason, then, how BAH, which [redacted] than DSA, somehow merits an [redacted].

In fact, BAH [redacted]. SOF ¶ 52. BAH [redacted] Factor 5 since it [redacted]. SOF ¶ 51. Since BAH only [redacted]

[redacted]. *Id.* (emphasis added).

Had BAH not [redacted], the comparative evaluations of BAH and DSA, and the Army's best value determinations, would necessarily have been different. DSA was prejudiced in its evaluation to the extent that BAH apparently received [redacted]. Not assigning the proper rating to BAH, along with the SSA's minimizing and ignoring DSA's [redacted], materially and adversely impacted DSA's chances for a contract award.

**3. The Army misapplied the RFP's evaluation scheme with respect to 2006 Small Business participation under Factor 5 (F5).**

The Army disparately applied RFP Factor 5 that requires of "large businesses only, an assessment of the Offerors' Small Business goals for CY 2006 for the DoD and other Federal Government agencies and the actual goals achieved." SOF ¶ 50. The Army's scoring and analysis of this requirement was disparate and unreasonable, thus resulting in significant errors and another example of the Army's failure to follow the RFP and FAR. The Army's method of tabulating pluses and minuses negatively impacted the evaluation of the proposals of DSA, which [redacted].

The Army failed to treat all proposals equally and subject to a common basis. *See Hamilton Sundstrand Power Sys. v. United States*, 75 Fed. Cl. 512, 516 (2007) (stating "it is well-established ... that a 'contracting agency must treat all offerors equally, evaluating proposals evenhandedly against common requirements and evaluation criteria'"). Where a solicitation provides a statement of all significant factors and subfactors that the agency will consider in

evaluating competitive proposals, the Government must adhere to this evaluation scheme when conducting evaluations. *See* FAR 15.305. DSA's [redacted]." SOF ¶ 58. The SSEB acknowledged [redacted]. SOF ¶ 59. Despite this acknowledgement, neither the SSEB nor the SSA [redacted]. SOF ¶¶ 58, 59.

In contrast, SRA received [redacted]. SOF ¶ 60. The Army [redacted].

The Army allowed similar [redacted]." SOF ¶¶ 62,63. Yet the Army refused to give any similar credit to DSA. Such disparate treatment, which is also inconsistent with the RFP evaluation criteria, is in violation of procurement regulations.

**COUNT III**
**<u>THE BEST VALUE DECISION OF THE ARMY WAS NOT PROPERLY ANALYZED OR DOCUMENTED</u>**

As discussed herein, this source selection was flawed in several ways: Factor 5, Small Business Participation, was not evaluated in accordance with the stated evaluation criteria; the Army failed to engage in meaningful discussions in that they favored Wyle over DSA, and regarding [redacted]; the SSA improperly performed the non-price/price tradeoff by failing to apply the stated weighting of evaluation factors; and the SSA deviated from the stated weighting of evaluation factors when comparing DSA's proposal against awardees BAH and Wyle.

Because the underlying [redacted] did not comply with the RFP, the award decision of the SSA does not actually reflect the best value to the Army. It is well established that the Government's best value analysis must be based on accurate evaluations and differences in the offerors' proposals. *See Chemical Demilitarization Assoc.*, B-277700, 1997 U.S. Comp. Gen. LEXIS 516 (where the agency has not meaningfully assessed the relative merits of the proposals under the stated evaluation plan, the agency's best value trade-off analysis was unreasonable and inconsistent with the stated selection plan); *Litton Systems, Inc.*, B-256709, 94-2 CPD ¶ 60 (protest sustained where best value decision was not based on reasonable determination of which offeror represented the best value to the Government); *TRW, Inc.*, B-25404.2, 94-1 CPD ¶ 18 (award was improper because the agency could not reasonably determine which proposal represented the greatest value to the Government); *Ashland Sales and Serv. Co.*, B-291206, Dec. 5, 2002, 2003 CPD ¶ 36 (protest sustained where the source selection decision was based on incorrect information from the evaluations).

**A. The Army's misapplication of the RFP's evaluation and weighting scheme improperly caused the award to Wyle to be based on a [redacted].**

By not according DSA [redacted], the SSA turned this solicitation into one where [redacted] the more significant factor. This is apparent in the SSA's best value determination comparison of [redacted] SOF ¶ 28.

DSA respectfully submits that the SSA did not conduct a fair evaluation of the comparative merits of the evaluations of DSA and Wyle. The SSA did not adhere to the RFP's

evaluation scheme that technical, non-price factors should be evaluated as "significantly more important" than price. The SSA's tradeoff determination, therefore, is flawed and unreasonable.

**B. The Army misapplication of the RFP's evaluation and weighting scheme improperly caused the award to BAH to be based on a [redacted]**

By not according DSA the proper weight to [redacted], and by overvaluing BAH's factors, the SSA turned this solicitation into one where [redacted] – the more significant factor. This is apparent in the SSA's best value determination comparison of DSA and BAH where [redacted] is frequently referenced. SOF ¶ 27.

DATED: July 22, 2008

Respectfully submitted,

DATA SYSTEMS ANALYSTS, INC.

By Counsel

WOMBLE CARLYLE SANDRIDGE & RICE PLLC

s/Holly Emrich Svetz
Holly Emrick Svetz
8065 Leesburg Pike, Fourth Floor
Vienna, VA 22182
(703) 394-2261
(703) 790-2623 (fax)

Of Counsel:
James K. Kearney
James S. Kurz

WOMBLE CARLYLE SANDRIDGE & RICE PLLC
8065 Leesburg Pike, Fourth Floor
Vienna, VA 22182
(703) 790-3310
(703) 790-2623 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of July, 2008, a copy of the foregoing DSA Memorandum of Points and Authorities in Support of Its Motion for Judgment on the Administrative Record was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Holly Emrick Svetz
Holly Emrick Svetz